No. 2529.—JOHN ARROWSMITH *v.* THE CITY OF NEW ORLEANS.   Suits:
Nos. 19,768 and 107 consolidated.

This suit is brought by the plaintiff to recover from the city of New Orleans certain parcels
of ground which it is alleged the city has taken possession of for the use of public streets
and highways. The evidence offered on the trial shows that for more than thirty-two
years prior to the institution of this suit the plaintiff has enjoyed the lands owned by-
him by a regular chain of title, and that during that long period of time he has never
set up any claim or ownership to the parcels taken and occupied by the city for the pub-
lic use, but on the contrary has been content with the limits to which the occupancy of
the city had restricted him. That he has sold many of the lots and portions of groun
owned with reference to the boundaries and measurement of the streets taken by the
city.

Held—That the plaintiff having adopted the plan of the city for the boundaries and measure-
ment of the lots, and having acquiesced therein for a period of thirty-two years, with a
full knowledge of all the facts, he is bound thereby, and from his selling lots with refer-
ence to the plan of the city his purpose to dedicate is fairly inferred.

Held further—That plaintiff can not now recover on the ground that a formal dedication is
not shown.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J.
J. O. Walker* and *Semmes & Mott,* for plaintiff and appellant. *H.
D. Ogden* and *Geo. S. Lacey,* City Attorney, for appellee.

TALIAFERRO, J. The plaintiff complains that the city of New Or-
leans, acting through its Mayor and Common Council, has in violation
of his rights taken possession of and appropriated to the public use
for the purpose of public streets and highways large amounts of his
land, the various parcels of which, to the number of seventeen, he
proceeds to designate by the names of the streets, specifying the ex-
tent of ground in each street so taken and appropriated, and alleging
the value thereof to be one hundred and fifty-five thousand dollars.
This suit was filed in the Sixth District Court on the eighteenth of
April, 1867. Subsequently, on the thirteenth of October, 1868, the
same plaintiff filed another suit against the same defendant, to recover
other portions of ground alleged to have been illegally taken from
him by the defendant and appropriated to public use for the purpose
of streets and highways, which he proceeds in like manner to desig-
nate to the number of thirty-two parcels of ground, specifying the sec-
tions or parts of the various streets in which they lie. The value of the
various lots sued for in the second suit he alleges to be two hundred
and sixty thousand four hundred dollars. The two suits were consoli-
dated and tried together in the lower court. The answer denies all
and singular the allegations of the plaintiff. The defendant avers.
that most of the streets mentioned in the plaintiff's petition are part
of the property formerly belonging to Mrs. de Pontalba and the heirs.
of Madame Chalon, who caused plans of the same to be made, dividing
it into lots and squares, and laying out the streets mentioned in the
plaintiff's petition, thereby dedicating them to public use. The defend-
ant specially denies that the plaintiff acquired title to any part of this.

land by the deed to him from Ferdinand D'Hébécourt, as alleged by plaintiff. There was judgment in the court below in favor of the defendant upon the whole claim set up by the plaintiff, except the claim in Bienville street and that in Carrollton avenue, and as to these there was judgment of nonsuit. The plaintiff has appealed.

Two bills of exceptions are found in the record, but it is not necessary in the decision of this case that we should consider them.

The controversy in this case arises chiefly from the setting up of title by the plaintiff to the land laid off into squares and lots and sold by Madame Pontalba and the heirs of Madame Chalon. He sets up this claim alleging that the land so disposed of by them makes part of the tract purchased by him from Ferdinand D'Hébécourt in 1833.

The tract bought by the plaintiff from Ferdinand D'Hébécourt on the seventh of September, 1833, by act before De Armas, notary, by plan A, is described as having twenty-three arpents, fourteen toises and three feet front on the Metairie road, and running back fourteen arpents. The side lines run at right angles to the base line and in a southwardly direction, terminating, as it seems, in a swamp. A rear line, connecting the ends of the side lines, appears and is designated "ligne nouvellement déterminée sur les lieux par l'arpenteur général," and the land adjacent to and south of this line is marked on the plan "propriété ci devant Macarty." This is the land which was laid off into squares and lots by Madame Pontalba by the plan presented by William Dunbar on the twelfth of December, 1848. The space of ground by that plan extends from the rear line of the land running fourteen arpents in depth from the Metairie road to Common street, and is the same marked on plan A as "propriété ci devant Macarty." The relative location of the land bought by plaintiff from Ferdinand D'Hébécourt and that laid off into squares and lots by Madame Pontalba by Dunbar's plan is displayed on the map D. Now, southwardly from the rear line of the D'Hébécourt tract, and at the distance, it would seem, of near a mile and a half, is the line of the Macarty plantation. The position assumed by the plaintiff, as we understand his petition, is that the sale to him by Ferdinand D'Hébécourt was a sale *per aversionem* and entitled him to all the land that would be inclosed by extending the side lines of the D'Hébécourt tract from their termination at the depth of fourteen arpents from the Metairie road to the line of the Macarty plantation, thus asserting title to the land appropriated for streets by Madame Pontalba in the plan by which her property was sold by squares and lots. As this claim of the plaintiff constitutes, with a trivial exception, the whole case, it will be necessary to trace, to a considerable extent, the titles to these two parcels of land and note the developments that may arise. We learn from the record then that the land purchased by the plaintiff

from D'Hébécourt is part of a body of land acquired by Joseph Desruisseaux in part, by grant from the French Government on the tenth of August, 1750, and partly by purchase from Joseph Girardey and Mrs. Jeanne Henry on the first of September, 1750. At the death of Joseph Desruisseaux the land passed by inheritance to his daughter Elizabeth, wife of Chalon. At her decease, her heirs sold that portion of this body of land, that the plaintiff subsequently purchased, to François D'Hébécourt by deed before Pedesclaux, notary, on the twenty fourth of July, 1820. The heirs of François D'Hébécourt sold to Ferdinand D'Hébécourt on the seventh of September, 1833, and on the same day he sold the property to the plaintiff. On the other hand, the title to the Pontalba tract commences from the concession by the French Government on the tenth of May, 1758. The land conceded is described as " the portion of vacant land between the boundary line of Desruisseaux and that of the Reverend Jesuit Fathers." The Desruisseaux acquired this land in the year 1774 by purchase from Magdelaine Brazelier. It is clear that this tract is entirely a different property from that sold to Arrowsmith, derived from a different grant and never sold or transferred as making any portion of the land purchased by Arrowsmith from Ferdinand D'Hébécourt. A claim was set up to the Pontalba tract by several claimants under a title derived from Mrs. Elenore Macarty in 1831, who purchased from Barthelemy Macarty in 1826. The land seems to have been held under this title in portions by the Canal Bank, Copeland and John Slidell.

Mrs. Pontalba, as heir of her father M. L. Almonaster, set up title to this tract through the Desruisseaux, and the heirs of Desruisseaux also claimed it. Between them and Madame Pontalba a compromise was effected, and combining, they made common cause in attacking the title set up under the Macarty's. In this contest they were successful. That suit established the location of the "ci devant Macarty property." It established clearly that Arrowsmith's title refers only to the concession by the Marquis de Vaudreuil and the purchase from the Girardey in 1750.

The plaintiff introduced in evidence several sales of property in support of his claim to the great extent he contends for. In the sale to Jason the extent from Metairie is fourteen arpents in depth. In this sale, as well as in those to Miro, Zamora and Fouvergne, the lands are described as bounded south " by Macarty." This clearly refers to the propriété ci devant Macarty, and the sale from Macarty to Macarty, it is clear, is the same property which is displayed on map D as Madame Pontalba's. The mortgage of Madame Desruisseaux, also introduced in evidence by the plaintiff, is against his pretensions. The property mortgaged is " a plantation situate on the Bayou St. John, measuring fourteen arpents front and thirty arpents in depth, bounded on one

side by the Metairie road and on the other by the lands of J. B. Macarty.

We find that the prior sales of the land Arrowsmith purchased from Ferdinand D'Hébécourt were all made with the same specification of extent, to wit: Twenty-three arpents fourteen toises and three feet front on the Metairie road, with fourteen arpents in depth. Each successive transfer of the property from that of July 24, 1820, by the heirs of Elizabeth Desruisseaux to François D'Hébécourt down to that made to plaintiff in 1833 contains the same expression of extent.

The plaintiff caused a plan of the property to be made in 1834, by which he proposed to sell lots. This plan, of which the map B is a copy, represents the land as having a depth of fourteen arpents. It is in proof that by this plan he sold a number of lots before Louis Ferrand, notary. It is further shown that in January, 1835, he deposited in the office of Cuvellier, notary, another plan made by J. N. De Pouilly, dividing the ground into squares and lots with the streets marked, and which is known as "Faubourg Jackson." This plan also retains the same description, twenty-three arpents fourteen toises and three feet front on the Metairie road by fourteen arpents of depth. The plaintiff caused the greater part of the lots displayed by this plan to be sold on the twelfth of January, 1835, by Fernandez and Whitney, auctioneers. This plan of Pouilly proved to be incorrect, in not having the base line along the Metairie road properly run. From this cause it seems the streets in their extension could not be made to conform to their original course in continuous straight lines, a condition required by the City Council as precedent to an acceptance on its part of plans for extension of the city by the laying off of building lots and the dedication of public streets. This error was afterward corrected, as shown by map or plan E, which it seems the plaintiff caused to be made in November, 1853, and deposited in the office of A. Ducatel, notary public. It is shown that this plan was made to correspond with the boundaries fixed by the judgment rendered in the suit between Madame Pontalba and the heirs of Desruisseaux, plaintiff, against Copeland and others to which we have referred. In this plan the same extent of fourteen arpents from the Metairie ridge is given, showing that to be the recognized extent of the plaintiff's land acquired from Ferdinand D'Hébébourt, and that that tract, at the extent of fourteen arpents from the ridge, joined what was known as the Copeland line or the tract called after the termination of the lawsuit by which those holding under the Macarty title lost their claims, "propriété ci devant Macarty." In his sale to Risington the plaintiff described a lot of ground as bounded to the extent of two hunded feet by the line which separates it from Copeland's property. It is shown that the plaintiff caused to be sold at public auction by Beard & May,

auctioneers, on the twenty-fourth of November, 1853, a large number of lots according to the plan last named, made by Hadden & Sharbourn, surveyors, and deposited in the office of the notary Ducatel.

The sale by D'Hébécourt to the plaintiff is clearly not a sale *per aversionem.* It does not by specified but unmeasured boundaries indicate a certain area or extent of land without reference to quantity; but, by measured lines it indicates a specific quantity, and the purchaser gets neither more nor less than that quantity. The pretensions of the plaintiff to a greater quantity of land than is contained within the measured lines of his survey have no foundation. It is made clear that prior to the institution of this suit in 1867 he has never claimed more than fourteen arpents from the Metairie ridge. For the period of thirty-two years before instituting this suit he has been content with those limits, and to them he must be restricted. The plaintiff holds that as his plan, made by Pouilly, was rejected by the City Council, the dedication proposed by him of ground for streets and public highways never took effect through failure of the city to accept it. The plan of the "Faubourg Jackson" was by resolution of the City Council of twenty-seventh December 1834, approved, " provided the streets therein designated be in exact continuation of the streets of the city." This plan, as we understand it, was amended so as to conform to the condition expressed in the resolution, and that the lots sold in 1835 and ever since by that plan have been located in conformity with it. The plaintiff, however, contends that, as the alteration of the Pouilly plan changed the exact location of the streets as proposed by him, the portions of ground occupied by streets are not the identical portions which he intended to dedicate, and that his offer to dedicate should have been positively accepted, and in accordance with the terms in which it was made.

It is manifest from the evidence in the record that the plaintiff sold the greater part of his lots in 1835, and his acts of sale refer to the plan, and have been located according to the conditions imposed by the City Council. The purchasers have accepted the location, and the plaintiff has never objected. He has acquiesced in this respect for thirty-two years with full knowledge of the facts, and by adopting the changed location by the act of selling lots in accordance with it. We think the purpose to dedicate may in this case be fairly inferred.

We deem it unnecessary to pass on the plea of prescription made by the defendant. The judge *a quo* dismissed as of nonsuit the claim of plaintiff, based upon the widening of Bienville street and Carrollton avenue. We find no satisfactory evidence in support of this special claim, but we confirm the judgment in its entirety.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed with costs.