Filed June 6, 1894.

———————◆———————

No. 757.

## Bennett, Executor, *v.* Seibert et al.

City.—*Street Improvement.—Precepts.—Appeal.—Defective Bond.—Dismissal.*—Where, upon appealing under section 3165, R. S. 1881, from a precept to collect an improvement assessment, a defective bond is given, the circuit court may, under section 1283, R. S. 1881, require a sufficient bond to be given, and if this be done a motion to dismiss the appeal should be overruled.

Same.—*Contractor and Not City Proper Plaintiff.*—The contractor, and not the city, is the proper plaintiff in a proceeding by precept to collect an improvement assessment.

Same.—*Dedication.—Sale of Lots With Reference to Plat.*—The mere act of surveying land into lots, streets, and squares, by the owner, will not of itself amount to a dedication of the streets, but a sale of lots with reference to such plan or plat, whether recorded or not, amounts to an immediate and irrevocable dedication by the owner.

Same.—*Sale According to Unrecorded Plat.—Recording in Different Form.*—If one owning land lays out land and makes and exhibits a map or plan thereof, with spaces marked squares, parks, etc., and sells lots with reference thereto, though the plan be unrecorded, the purchasers acquire every easement privilege which the plan represents, and the dedication of the public squares, parks, etc., becomes irrevocable, and the subsequent recording of the plat in different form can not change the character of the dedication.

Same.—*Street Park.—Liability of the City for Street Improvement Bordering Upon.*—Where there is a dedication and an acceptance of a street with a park in the center and a roadway upon each side, the park becomes public ground for park purposes, under the control and qualified ownership of the city, and where an ordinance for the improvement of the street recognizes the character of the ground and orders the improvement accordingly, the city is liable

Bennett, Executor, *v.* Seibert *et al.*

for its proportion of the improvement bordering upon the park ground.

APPELLATE COURT PRACTICE.—*Instructions.—Causes for New Trial.— Assignment of Errors.*—Errors in giving or refusing instructions are causes for a new trial and can not be independently assigned as errors in the appellate court.

SAME.—*Pleading.— Striking Out.— Bill of Exceptions.—Practice.*—A ruling striking out a pleading is not reviewable on appeal where neither the motion to strike out nor the pleading is brought into the record by bill of exceptions or order of court.

SAME.—*Appeal.—Parties.—Jurisdiction.—Dismissal of Appeal.— Waiver of Objection.—Rehearing.*—Where an appellant fails to bring all of the necessary parties into court the appeal will be dismissed for want of jurisdiction, if moved for in time, unless the error be corrected, but it is too late after a decision upon the merits to raise the objection in a petition for a rehearing.

From the Marion Circuit Court.

*J. Coburn,* for appellant.

*C. S. Denny, W. F. Elliott* and *R. W. McBride,* for appellees.

GAVIN, C. J.—By virtue of a city ordinance, certain improvements were made in the city of Indianapolis, the expense of which was assessed against the property owners. Deloss Root, appellant's intestate, appealed from the precept to collect an assessment against his realty, his right of appeal being based on section 3165, R. S. 1881.

The first question with which we are confronted arises upon the cross-error assigned.

It is contended by appellee that the appeal should have been dismissed by the circuit court for want of a bond.

Within the proper time an appeal bond was filed, which was, however, payable to the city of Indianapolis instead of to appellees, although the bond clearly and plainly shows the particular precept from which the appeal is taken. Upon the filing of the motion to dismiss, the court required the appellant to file a new bond payable

to appellees, which was done, and the bond was approved by the court. This action of the court was authorized by the statute and sustained by authority.

Section 1283, R. S. 1881, provides that when an appeal-bond "shall be defective in substance or form, or for want of proper approval, such case shall not be dismissed on account of such defect or informality, if the appellant will, when required by the court to which such appeal is taken, file in such court a sufficient bond, with surety to the acceptance of such court, in such sum as such court shall require."

In *Boden* v. *Dill*, 58 Ind. 273, an injunction bond was payable to one only of two defendants. It was held to be defective merely, and that an action upon it was maintainable by both the defendants.

In *Corey* v. *Lugar*, 62 Ind. 60, it was decided that the fact that a bond was payable to the State instead of to the appellee, was not ground for dismissal.

In *Board, etc.,* v. *Loeb*, 68 Ind. 29, a bond was payable to Fountain county instead of to the board of commissioners, etc. It was held no cause for dismissal, but that the remedy was to require a new bond under section 1,283.

The cases of *First Presbyterian Church* v. *City, of Lafayette*, 42 Ind. 115; *Clift* v. *Brown*, 95 Ind. 53, and *Faurote* v. *State, ex rel.*, 110 Ind. 463, support this position.

There is, in the opinion of the court, in *Crumley* v. *Hickman*, 92 Ind. 388, nothing which conflicts with these cases. On the other hand, the proposition of law therein laid down is in perfect harmony with them. There is not here an attempted appeal with no bond. There is a bond insufficient possibly, defective certainly, but still a bond which is promptly replaced with a sufficient one when objection is made. It comes within both

the letter and spirit of the statute.   We conclude, there-fore, that the cross-error assigned is not well taken.

We now come to the appellant's case.   The ruling, whereby the name of the city as a party plaintiff was stricken out, was right.   The contractor, and not the city, is the proper party.   *First Presbyterian Church* v. *City of Lafayette, supra.*

Of the errors assigned, those numbered from 10 to 22, inclusive, refer to the giving and refusing of instruc-tions.   They are properly causes for a new trial and are not to be assigned as errors in this court.   Thornton on Juries, section 239; *Northwestern, etc., Life Ins. Co.* v. *Heimann,* 93 Ind. 24.

The 24th, 25th and 26th causes are not discussed and are thereby waived.

Under the peculiar provisions of our statute the record of the proceedings filed by the appellant in the circuit court, is to be regarded as the complaint of appellee.   To this a demurrer for want of facts was overruled, with an exception.   Answer of general denial was filed, together with six paragraphs of affirmative answers.

Demurrers to the 2d, 3d, 4th, 5th and 7th paragraphs were sustained.   The 6th was struck out on motion, leav-ing the general denial the only answer standing.   A trial resulted in a verdict and judgment for the plaintiff for the full amount of the claim.

Appellee's motion to strike out the sixth paragraph of answer was sustained.   We are not permitted to con-sider the correctness of this ruling, for the reason that neither the motion itself nor the paragraph thus struck out have been brought into the record either by bill of exceptions or by order of the court.   *Jones, Exr.,* v. *Noe,* 71 Ind. 368; *Klingensmith* v. *Faulkner,* 84 Ind. 331.

No argument is made as to the sufficiency of the third

paragraph of answer. For this reason we do not consider it.

. The vital questions in dispute are presented upon the demurrers to the complaint and to the 2d, 4th and 5th paragraphs of answer.

The complaint shows an ordinance for the improvement, and all proceedings are regular except in the one respect as to which objection is made.

The ordinance is entitled "An ordinance to provide for grading and graveling the roadways and sidewalks, and grading the public grounds and lawns of Hendricks street from Nebraska street to Lincoln lane."

Section 1 reads: "Be it ordained by the Common Council and Board of Alderman of the City of Indianapolis, that Hendricks street sidewalks and public grounds, from Nebraska street to Lincoln lane, be graded according to the stakes set by the city civil engineer on the following grades, to wit: * * *, and the roadway where there is no public ground at each end of Hendricks street, is to be graveled a width of forty feet, and between the said public grounds near the middle of Hendricks street a width of sixty feet, and the roadway on each side of said public grounds to be graveled to a width of fifteen feet, said graveling to be a depth of fifteen inches in the center of said street where there are no public grounds, sloping to five inches at the sides at each end of said street, and in the middle between said public grounds to a depth of fifteen inches, and at the sides to correspond with the grading of the roadway on each side of said public grounds to be twelve inches in depth on the sides and eight inches in depth on the center, with the best raked river or creek gravel, and eight feet of the inner portion next to the lot lines shall be graded as lawns on each side of the street, and the outer portions of said sidewalks shall be graded as lawns on each side of the

street, six feet in width, and the lawn next to the roadway, where the roadway is forty feet wide, shall be ten feet wide; all work to be done to the satisfaction of the city engineer; and that the expense of grading and graveling of the roadways and sidewalks and lawns of said street, as aforesaid (except so much thereof as is occupied by the public grounds owned by said city, bordering thereon, and one-half of the roadway bordering the same, and for crossings of streets and alleys), be assessed against and collected from the owners of lots bordering on and within fifty feet of said street between the limits aforesaid, according to the provisions of sections 68, 70 and 71 of the act'' of 1867, and of section 69, as amended in 1881.

On August 6, 1888, it appears that sealed bids were opened ''for grading and graveling the roadway and sidewalks and grading the public grounds and lawns of Hendricks street from Nebraska street to Lincoln lane.'' The bids were referred to a committee, which reported that they found the bids to be as follows: ''For grading and graveling the roadway, the sidewalks and public grounds and lawns of Hendricks street from Nebraska street to Lincoln lane, * * * Geo. W. Seibert & Co., $1.33 per lineal front foot on each side.''

They being the lowest bidder received the contract, which provided that they should grade and gravel Hendricks street, and sidewalks from Nebraska street to Lincoln Lane for $1.33 per lineal foot front on each side; to be collected ''from the owners of the property bordering on said improvement, according to their respective number of feet, and from the city of Indianapolis for any lot or lots owned by said city, and for crossings of all streets and alleys.'' After the completion of the work a first and final estimate was made and adopted, assessing the entire cost of the improvement against the in-

dividual property owners, except $23.33 assessed against the city of Indianapolis.

The question sought to be raised does not fairly arise upon the complaint. There is nothing in the city record to show the extent of these "public grounds" for which the city should pay, if appellant's theory be the correct one. For all that appears in the record as it came to the circuit court, the assessment made against the city may have paid for all of the improvement for which the city was upon any theory liable. There is no defect, therefore, apparent upon the face of the record.

The facts upon which the defense argued is based, appear in the fourth paragraph of the answer, where it is shown that Hendricks street is 891 feet long; that it is not crossed nor intersected by any street or alley except one alley on one side twelve feet wide; that the street is ninety feet in width for a distance of ninety feet at one end, and one hundred feet at the other; and for a distance of fifty feet, about the middle of the street; that beginning ninety feet from the north end there is a strip of public ground 30 feet wide, equi-distant from the east and west sides of Hendricks street, with a street on each side, 30 feet wide, bordering thereon; that 50 feet south of this strip there is another similar one; that the street and strips of public ground were laid out, platted and dedicated to the public by James O. Woodruff before the defendant, Deloss Root, purchased the lot 59, named in the complaint; that before the 1st day of April, 1872, he exhibited to said Root a plat of his subdivision, described as such, and "both of the strips of ground above described, and situated in the center of Hendricks street, were marked with the word 'Park' on each of them, with the word 'Drive' marked on the street on each side and bordering thereon"; that the plat was exhibited to said Root by said Woodruff, who, at the time, stated that it

was made for the purpose of selling the lots in his subdivision, and that the spaces or strips marked as "parks" were intended to be used, treated and remain as such public ground; that the said Root saw the words "Park" and "Drive" on the plat before he purchased the said lot and understood that the land described as "Park" was public ground, and that the land marked as "Drive" was for use as the street bordering thereon; that prior to his purchase said Woodruff stated that these places were parks, bordered by a street on each side; that the exhibition of the plat and the said statements were made as an inducement to said purchase by Root, who, in reliance thereon, on the 1st day of April, 1872, purchased said lot, and divers others also purchased lots, relying on like statements and exhibitions to them; that on April 2, 1872, Woodruff placed on record the plat of his subdivision, which was duly recorded; "that the streets, alleys and public grounds were dedicated to the public use by him as they appear upon said plat, which is similar to the one he had exhibited to defendant and other purchasers; that such streets, alleys and public places were, on this plat, marked and designated by lines and figures only in exact correspondence with the one exhibited to purchasers; that the streets and public grounds so indicated and dedicated have remained such and are such at this time; that they have been continuously, from the time of their dedication, used, held and treated as such by the owners of the lots abutting thereon, by the public, and by the city authorities to this time; that the above named public grounds are the same public grounds named in the ordinance in the complaint and have been accepted as such by the city; that defendant's lot abuts upon that portion of Hendricks street which borders upon the public grounds; that the entire expense of the improvement has been charged to the lot owners on each

side of the streets, instead of charging to the city the expense of improving the parks and one-half the roadway bordering upon them.

The appellant argues strenuously that by the terms of the ordinance itself the city is to pay for this part of the improvement.

Appellees' counsel, on the other hand, assert that these strips of ground were simply parts of the street, to be put to any street use desired by the city, and not in any manner "owned" by the city.

It is always proper to consider the surrounding circumstances as throwing light upon the construction to be given to a written instrument where its terms are in any degree ambiguous. *H. G. Olds Wagon Works* v. *Coombs*, 124 Ind. 62; *Cravens* v. *Eagle, etc., Co.*, 120 Ind. 6.

We are, therefore, to construe the ordinance in the light of the additional facts supplied by the answer. The answer shows that prior to April 2d, when he filed his plat for record, Woodruff had made a plat on which lots were laid off and spaces were left, indicating the dedication of streets, with spaces plainly marked "park" and "drive," with the statements that the spaces marked parks were to be used for and were parks; he sold lots to purchasers relying thereon. When these purchasers bought their lots they acquired also the right to require that the streets and parks should remain open as such. As to Woodruff these facts show the dedication to have been complete, and it is so alleged in the answer.

"An owner who makes a plat on which spaces are left indicating the dedication of roads or streets, and sells lots with reference to the plat, can not recall his dedication." Elliott Roads and Streets, 89.

The mere act of surveying lands into lots, streets and squares by the owner will not of itself amount to a dedi-

cation, yet a sale of lots with reference to such plat, map or plan, whether recorded or not, will amount to an immediate and irrevocable dedication of such streets, etc., so far as the owner is concerned.  5 Am. and Eng. Enc. of Law, 405;  *City of Logansport* v. *Dunn*, 8 Ind. 378; *Hurley* v. *Mississippi, etc., Co.*, 34 Minn. 143;  *Arrowsmith* v. *City of New Orleans*, 24 La. Ann. 194; *Baker* v. *Johnston*, 21 Mich. 319.

The principles governing the dedication of highways are equally applicable to parks and other public grounds. If one owning lands lays out a town thereon, and makes and exhibits a map or plan thereof, with spaces marked public squares, parks, etc., and sells lots with reference to such map or plan (though unrecorded) the purchasers of lots in such town acquire, as appurtenant thereto, every easement privilege which the map or plan represents as a part of the town, and upon the sale of lots, by reference to such plat, the dedication of the parks, public squares, etc., becomes irrevocable.  17 Am. and Eng. Enc. of Law, 408; *Doe on Demise* v. *President, etc.*, 7 Ind. 641; *City of Logansport* v. *Dunn, supra; Trustees of Watertown* v. *Cowen*, 4 Paige Ch. 510; *City of Cincinnati* v. *White*, 6 Peters (U. S.), 431; *Abbott* v. *Inhabitants, etc.*, 143 Mass. 521; *Commonwealth* v. *Rush*, 14 Pa. St. 186; *Price* v. *Inhabitants, etc.*, 77 Mo. 447; *Abbott* v. *Mills*, 3 Vt. 521.

In the light of these authorities it seems clear that at the time of filing the recorded plat, the right to these parks had passed from Woodruff by reason of his completed dedication by platting and selling off the lots.  This being true, he could not, by recording a plat in different form, give to the public for one use that which had already passed from him for another purpose, even if it appeared that he had so intended.. There is, in fact, no contradiction in the plats.  The recorded plat is not

so definite as the other, yet the parks being marked off in what would otherwise be the center of the street, clearly indicates that they were not intended as part of the street, for if they had been so intended there would have been no need for such lines of separation. *City of Indianapolis* v. *Kingsbury*, 101 Ind. 200, p. 209.

The recorded plat is in this form,

without any words to designate the streets or parks. The other plat was similar, with the words "park" and "drive" added.

The acceptance by the city of these parks as such public ground is expressly averred. There being both a dedication and an acceptance these parks became public parks in the strictest sense of the term, and were to be maintained as such. Being parks, they can not be said to be, in any proper sense, parts of the street. Streets and parks, while they are both devoted to the uses of the public, are set apart for widely different purposes. A street is a place of passage; a park a place of rest or recreation. A park denoted formerly a private enclosure to restrain game. 2 Black. Com. 38.

The word has, however, acquired a much wider significance, departing from its original use. It is now ordinarily understood to mean, when applied to ground in a town or city, a tract of land set apart for ornament, or to afford the benefit of air, exercise or amusement. "It is a piece of ground of any size in or close to a town, and open to the public for the purposes of recreation, pleasure or exercise, subject to the regulations of the local authorities." Encyc. Dic.

"It is a place for the resort of the public for recreation,

air and light." *Price* v. *Inhabitants, etc.*, 40 N. J. L. 612.

"Any piece of public ground, generally in or near a large town, laid out and cultivated for the sole purpose of pleasure or recreation, without any regard to the size of the ground or the style of the arrangement." Imp. Dic.

The Webster, Century, and some other dictionaries define it as an "enclosed tract." In this they are too narrow for the generally accepted meaning of the word at the present day, for many parks, both large and small, are unenclosed.

In *City of Fort Wayne* v. *Shoaff*, 106 Ind. 66, it is held that a market space can not be macadamized and improved at the expense of adjoining lot owners.

*In re extension of Church Street*, 49 Barb. 455, it is decided that parks and markets must bear their proportionate share of the expense of adjacent street improvements.

In *Scammon* v. *City of Chicago*, 42 Ill. 192, the court adjudged that parks and public pleasure grounds must share in the improvement of streets bounding them.

It follows, then, that these strips in controversy were public grounds devoted, not to street, but to park purposes. Being such, their control properly belonged to the city, and the expense of their improvement was properly imposed upon the city.

It must be borne in mind that we are here concerned with a case where the dedication for park purposes was made before the public acquired a right to the entire space for street purposes. We would have a different proposition if the entire space had been once dedicated as a street, and the city had subsequently made the park improvement. *Murphy* v. *City of Peoria*, 119 Ill. 509.

Whether or not the city was necessarily required to pay for the improvement of one-half the roadway border-

ing upon these tracts, we are not called upon to determine. We are forced to the conclusion that by the terms of the ordinance the city has assumed this expense, and having ordered the improvement upon this basis, it can not afterwards impose that additional burden upon the private lot owners.

The ordinance plainly recognizes that these strips are of a different character from the street proper. It repeatedly makes the distinction between the "public ground" and the "roadway on each side of said public ground." By its terms, the expense of the improvement is not to be wholly borne by the lot owners, but there is excepted "so much thereof as is occupied by the public grounds owned by said city bordering thereon and one-half of the roadway bordering the same, and for crossings of streets and alleys."

We can not presume that these words were a mere form, meaningless and of no effect. It is a general rule of interpretation that force and effect shall, if practicable, be given to all the language used in an instrument. From the facts before us, it appears there are no other public grounds along the line of this improvement except these parks. If the provision is not to be applied to them, it applies to nothing. There is significance also in the provision "and one-half the *roadway* bordering the same," because if the public grounds thereby intended were such only as were located on the east or west side of the street proper, as claimed by counsel for appellee, there would be sidewalks as well as roadway to be included. These parks have roadways bordering upon them, but no sidewalks. The fact that no provision is made for sidewalks along these public grounds indicates clearly that the public grounds therein contemplated, would have no sidewalks along them.

Under the facts, as alleged, we do not think the phrase

"public grounds *owned* by the city," is to be construed simply such public grounds as are owned by the city in fee-simple by deed, which counsel seem to contend to be the only title contemplated thereby.    As the representative of the public, the city acquires, by a dedication and acceptance, such an interest in a public park as gives it, in some sense of the term at least, an ownership of the land.    Ownership does not necessarily require the absolute title in fee.    One may own a much less interest in land than the fee.

"Owner of real property:    The word owner includes any person who has the usufruct control or occupation of the land, whether his interest in it is an absolute fee or an estate less than a fee."    17 Am. and Eng. Encyc. of Law, p. 299, and authorities cited.

The fifth paragraph of answer sets up substantially the same material facts as the fourth.

Our conclusion is that the court erred in sustaining the demurrers to them.

Judgment reversed.

Filed Oct. 18, 1893.

### On Petition for a Rehearing.

Gavin, J.—The appellees seek a rehearing upon the ground that this court had no jurisdiction, by reason of a failure of the appellant to bring before it all the parties plaintiff in the court below.    The judgment was in favor of George W. Seibert, Leander A. Fulmer and Frederic Gansberg.    In preparing the assignment of errors, counsel for appellant, by misprision and accident, wrote the name of the second appellee as "Hiram Seibert" instead of Leander A. Fulmer, as it should have been.

The authorities establish the proposition as claimed by appellees' learned counsel, that the presence of all the parties in whose favor a joint judgment has been rend-

ered is required to confer jurisdiction upon the appellate tribunal. *Bozeman* v. *Cale*, 35 N. E. Rep. 828.

Counsel insist that because it is jurisdictional, it can not be waived.

Not only is the necessity for bringing in the parties succeeding in the court below jurisdictional, but the presence before the Appellate Court of all the requisite co-parties is, according to the adjudications of the Supreme Court, also jurisdictional. Elliott's App. Proced., section 144; *Shulties, Admr.,* v. *Keiser*, 95 Ind. 159.

Our authorities make no distinction between co-parties and appellees as to the obligation to bring into court all necessary parties.

In Elliott's App. Proced., section 138, the rule is thus expressed: "It is essential that all persons whose interests may be substantially affected by the judgment on appeal should be made parties to the appeal in some appropriate mode."

While all the authorities agree that all necessary parties should be in court, yet our decisions abundantly establish the proposition that their absence may be waived.

"As far as a question can be settled by decisions, the question as to a waiver by a failure to object because the necessary co-parties were not notified, is settled by our cases." Elliott's App. Proced., section 145, and the numerous cases there cited.

It is true the learned authors of this book question the logical soundness of the proposition, but the decisions are clear and explicit, and we feel bound to follow them.

The leading case holding these matters to be jurisdictional plainly recognizes the right of waiver, because it sums up the result of the discussion in these words: "When, therefore, all the parties entitled to be heard upon an appeal have not been brought before the Appel-

late Court, the appeal will be dismissed when a question is made upon the omission at the proper time, and in some appropriate way." *Hunderlock* v. *Dundee Mortgage, etc., Co.,* 88 Ind. 139.

That the name of Fulmer should have appeared in the assignment of errors, properly written, there can be no doubt. *Bozeman* v. *Cale, supra; Braden* v. *Leibenguth,* 126 Ind. 336; *Brown* v. *Trexler,* 132 Ind. 106; *Snyder* v. *State, ex rel.,* 124 Ind. 335.

And that the appeal would have been dismissed if the dismissal had been sought at the proper time, unless the error had been corrected, is equally true; but to say that advantage can now be taken of this defect under the circumstances of this case, is quite another proposition. Here the assignment was intended to include Fulmer. It was treated by all the parties, and by the court, as including him. The cause was briefed by counsel on both sides in the belief that it did so. Counsel for the appellees joined in error by a denial, in which the names of their clients were not given, but they appeared simply for the "appellees." They also filed an assignment of cross-errors, in which they set out the names of the parties in full and correctly, as follows: "Henry W. Bennett, Executor, etc., appellant, *v.* George W. Seibert, Leander A. Fulmer and Frederick Gansberg, appellees."

They, as counsel for the "appellees," in the same brief, presented the cause both upon the original assignment of errors and the cross-assignment, and the cause was decided by the court upon its merits. We are clearly of the opinion that counsel have all along appeared for Fulmer as an appellee; that he has come into this court voluntarily and submitted his rights to its adjudication, and that both he and his co-appellees have waived the defect in the assignment of errors. It would be a most

palpable miscarriage of justice to hold otherwise. Did the law and the decisions of our court require it, it would be, of course, our duty to follow them, but they do not, in our judgment, either require or permit it. It is now too late, upon petition for rehearing, to raise the objection. *Critchell* v. *Brown*, 72 Ind. 539; *Ten Brook* v. *Maxwell, Admr.*, 5 Ind. App. 353.

The error in the name might, upon a proper showing, have been corrected, even after the expiration of the year. *Bank, etc.*, v. *Inman*, 133 Ind. 287; *Hutts* v. *Martin*, 131 Ind. 1; Elliott's App. Proced., section 113; *McDonald* v. *Swett*, 76 Cal. 257.

There is no necessity for the *nunc pro tunc* entry asked for.

The petition for rehearing is overruled.

