Chicago, Rock Island and Pacific Railway Co. *et al.*

*v.*

The City of Moline.

*Filed at Ottawa October 11, 1895.*

1. Public improvements—*railroad right of way in street taxable for street improvement.* The rights of way of railroad companies lying in public streets are "contiguous" to such streets, within the meaning of the constitution and statute, and are subject to special taxation for the improvement of such streets.*

2. Same—*term "right of way," in taxing ordinance, not ambiguous.* The use of the term "right of way," in an ordinance providing for the special taxation of railroad property for street improvement, is not ambiguous, but imposes the tax upon the tracks and road-beds lying in the street to be improved.

3. Same—*collection of tax from owners of property is collection from the property.* An ordinance for a street improvement is not invalid in providing that a special tax be levied, assessed and collected upon and from the rights of way of railroad companies in the streets, as the collection of taxes from the owners, as provided by the statute, is a collection from the property.

4. Same—*proportion of tax imposed on right of way presumed correct.* When the estimate of the proportion to be imposed upon a railroad right of way for a street improvement is made in the exercise of a reasonable discretion, the tax imposed will be presumed to represent the share to be borne by the railroad property upon the principle of uniformity.

5. Same—*assessing railroad property at specified percentage—uniformity.* A special tax for a street improvement, of a specified percentage of the cost, upon the rights of way of railroads in the street, is not invalid, as lacking uniformity, because abutting private property is assessed by frontage.

6. Same—*specified percentage not an arbitrary exaction.* Such imposition upon railroad property of a specified percentage of the cost of the improvement will not be held invalid, as a mere arbitrary exaction, where the public authorities have made their estimate and assessment in apparent good faith.

Appeal from the County Court of Rock Island county; the Hon. Lucian Adams, Judge, presiding.

*The conflicting authorities on the liability of a railroad right of way to assessment for local improvements are found collected in a note to *Chicago, Milwaukee and St. Paul Railway Co.* v. *City of Milwaukee,* (Wis.) 28 L. R. A. 249.

Sweeney & Walker, and Henry Curtis, for appellants :

The rights of way mentioned in said ordinance, where they are in the streets in question, are not the subject of special taxation, because they are not "contiguous property," within the meaning of the constitution or of the statute.   The constitution of 1870 (art. 9, sec. 9,) provides: "The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of *contiguous* property, or otherwise." The phrase "or otherwise," seems to have been used merely to guard against the exclusion of the idea of general taxation. *Wilson* v. *Trustees*, 133 Ill. 443.

Rights of way are not such "contiguous" property. *South Park Comrs.* v. *Railroad Co.* 107 Ill. 105 ; *O'Reilly* v. *Kingston*, 114 N. Y. 430.

That in such cases contiguous and abutting property are one and the same, is expressly decided in *Green* v. *Springfield*, 130 Ill. 515.   See, also, *County of Adams* v. *Quincy*, 130 Ill. 566; Webster's Dic. "Contiguous."

The ordinance is also illegal and void in providing that the special tax provided for in the first paragraph of section 7 thereof shall be collected upon and from said railroad *rights of way*.   *County of McLean* v. *Bloomington*, 106 Ill. 209; *Taylor* v. *People*, 66 id. 322; *Comrs. of Highways* v. *Drainage District*, 127 id. 581.

The special taxation provided for by the ordinance lacks uniformity within the taxing district, and the ordinance is therefore void.   *Davis* v. *Litchfield*, 145 Ill. 313.

The provisions taxing railway companies the whole cost of so much of the improvement as is included in certain strips in the streets occupied by their respective tracks is a mere arbitrary exaction, and without warrant of law.   *Davis* v. *Litchfield*, 145 Ill. 313 ; 2 Wood on Railway Law, 976, 977; *Bloomington* v. *Railroad Co.* 134 Ill. 451.

Joseph B. Oakleaf, City Attorney, and Joseph L. Haas, for appellee:

The reasonableness and legality of an ordinance do not depend upon the testimony of witnesses as to its possible or probable effect. *Launder* v. *Chicago*, 111 Ill. 291.

The city council has determined the character of the improvement, and it cannot be urged as an objection that something else is as good or better. *Cram* v. *Chicago*, 138 Ill. 506, and 139 id. 266.

Whenever the question of exemption from tax, claimed by steam railroads, came up, this court has most emphatically refused to recognize such claim. *Railroad Co.* v *Decatur*, 126 Ill. 92; *Railroad Co.* v. *Mattoon*, 141 id. 32.

It is not an objection to an assessment for local work that the property assessed is used for a purpose that will not be specially advanced by the improvement, as, for instance, that it constitutes the track of a railroad. Cooley on Taxation, (2d ed.) 652.

In "special assessments" the commissioners appointed by the court determine the benefits, while in "special taxation" the city council determines the benefits, which determination is final. *Craw* v. *Tolono*, 96 Ill. 255; *Sterling* v. *Galt*, 117 id. 11; *Railroad Co.* v. *Decatur*, 126 id. 92; *White* v. *People*, 94 id. 607.

The apportionment is always made as in the case at bar. *Wilbur* v. *Springfield*, 123 Ill. 395.

By uniformity of taxation is not meant that the mode of taxation and the imposition of the tax, as to dollars and cents, must be strictly uniform, even when the interests to be taxed are so distinct and different in their character as not to admit of uniformity in that sense. *Brown* v. *Chicago*, 110 Ill. 186; *Gartside* v. *East St. Louis*, 43 id. 47.

The ordinance in the case at bar gives sufficient *data* for the commissioners to ascertain the amount, and to levy the tax against the railroad rights of way. *Sterling* v. *Galt*, 117 Ill. 17.

Mr. Justice Bailey delivered the opinion of the court:

This is an appeal from a judgment of the county court of Rock Island county, confirming a special tax levied by the city of Moline to pay the cost of excavating, draining, grading, curbing and paving certain portions of Thirteenth, Fourteenth, Fifteenth, Sixteenth and Seventeenth streets, in that city. The portions of the streets thus sought to be improved are crossed by the tracks of the Chicago, Rock Island and Pacific Railway Company and of the Chicago, Burlington and Quincy Railroad Company, and both companies have passenger stations upon the contiguous property. The freight yards and freight depot of the Chicago, Burlington and Quincy Railroad Company also abut upon the proposed improvement, and its side-tracks connected therewith cross the streets to be improved, and the freight yards of the Chicago, Rock Island and Pacific Railway Company, and the tracks connected therewith, are also situated so as to be affected by the improvement. It thus appears that a large part of the property abutting upon and contiguous to the improvement is owned and occupied by these railroad companies.

The ordinance under which the special tax was levied was passed February 26, 1894, and its material provisions are as follows:

"Sec. 1. That Thirteenth street, from the south line of Third avenue to the south line of Fourth avenue; Fourteenth street, from the south line of Third avenue to the south line of Fourth avenue; Fifteenth street, from the north line of Second avenue to the north line of Third avenue, and from the south line of Third avenue to the south line of Fourth avenue; Sixteenth street, from the south line of Second avenue to the north line of Third avenue, and from the south line of Third avenue to the north curb line of Fifth avenue; and Seventeenth street, from the south line of Third avenue to the south line of

Fourth avenue,—which said streets are eighty (80) feet in width,—all in the city of Moline, Illinois, be and the same are hereby ordered to be excavated, drained, graded, curbed and paved of the width of fifty-six (56) feet in the center of said streets, and full width at alley intersections and full width between curb lines at street intersections, except such portions of said intersections as are embraced within the territory hereinafter described in which no curbing is to be set, which portions of said intersections, as aforesaid, shall be paved fifty-six (56) feet in width.

"Sec. 2. The road-bed of said portions of said streets between curb lines, except where no curbing is to be placed, as hereinafter described, shall be excavated for a brick pavement, to such a depth as will cause the top of the pavement, when laid as hereinafter set forth, to be as follows, viz.: The crown or center of the streets and the top of the curb to be at grade at each respective point as established by ordinances passed by said city council on the second day of March, A. D. 1891, the sixteenth day of November, A. D. 1891, and on the sixteenth day of January, A. D. 1893. On either side of the crown or center of the streets the pavement to slope towards the curb line in an arc of a circle, whose tangent is a right line touching the said crown or center and the curb at corresponding points, and with a radius of such a length as will cause said arc to fall six (6) inches below the top of the curb: *Provided*, that at street intersections the form of both streets shall be the same as above until they intersect in the diagonals of said streets: *And provided further*, that on any street on which there is a street railway the crown or center shall be held to mean a right line on and from outside to outside of the rails of said street railway: *Provided further*, that except within street car tracks the brick shall be placed flush with the tread of the rail on the outside and on the inside flush with the tram, and the pavement between the rails shall be con-

cave, with a depression of one inch in the center of the track below the tram of said rails. On that portion of said streets where no curbing is to be placed, as hereinafter described, the road-bed shall be excavated the same width as that portion of said streets where curbing is placed, to such a depth as will cause the top of the pavement, when laid as hereinafter described, to conform to the grade of said streets as hereinbefore stated, intending thereby that there shall be no depression for gutter."

Sections 3, 4 and 5 provide for storm-drains, etc., for curbs on certain portions of the streets, and for catch-basins and connections, and section 6 provides for the manner of constructing the road-bed, with a bottom or foundation layer of limestone macadam, and requires that this macadam, on those parts of the streets occupied by the tracks of the railways, shall have a depth of six inches greater than in other parts. Sections 7, 8 and 9 are as follows:

"Sec. 7. The cost of making so much of said improvement on said streets which is included in the right of way of any steam railroad, being the space between the rails and one foot on the outside of such rails, shall be made and the cost thereof paid by special taxation of said rights of way, and for that purpose a special tax is hereby levied and ordered to be assessed and collected upon and from said rights of way. The cost of making so much of said improvement on said streets which is included in the right of way of any street railroad, being the space between the rails and fifteen (15) inches on the outside of such rails, shall be raised and paid by special taxation of said rights of way, and for that purpose a special tax is hereby levied and ordered to be assessed and collected upon and from said rights of way.

"Sec. 8. That fifteen (15) per cent of the cost of making so much of said improvement on said streets which is not included within the right of way of any steam or street railroad, as aforesaid, shall be paid by general

taxation, and shall be included in the next annual appropriation ordinance, and levied and collected with and as a part of the general taxes of said city.

"Sec. 9. The remainder of the cost of making said improvement on said streets shall be raised and shall be paid by special taxation of the lots, blocks, tracts and parcels of land touching upon the line of said improvement, in proportion to the frontage thereof, and for that purpose a special tax is hereby levied and ordered to be assessed and collected upon the several lots, blocks, tracts and parcels of land touching upon the line of said improvement, as aforesaid, in proportion to their frontage upon the said line of improvement."

The subsequent sections are not material to any question raised upon this appeal.

Upon the passage of this ordinance the city appointed the usual committee to estimate the cost of the improvement, and their estimate was returned and approved. A petition was thereupon filed by the city in the county court, setting forth the ordinance, and praying for the appointment of commissioners to assess the special tax, and on such petition commissioners were appointed, who subsequently returned their assessment roll. The two railroad companies above mentioned appeared and severally filed objections to a confirmation of the special tax, and on the hearing of their objections by the county court certain of the objections were sustained, and the report of the commissioners was thereupon, by order of the court, returned to them to be re-cast. The commissioners having subsequently filed their amended or re-cast report or assessment roll, the railroad companies renewed their former objections, and also filed additional objections, and upon a further hearing these objections were all overruled and judgment was entered confirming the special tax, and from that judgment this appeal is taken.

The first contention by the appellants is, that the rights of way of the two railroad companies mentioned in the ordinance, being in the streets in question, are not "contiguous property," within the meaning of the constitution and statute, and that they are therefore not subject to special taxation.   This precise question was discussed, if not expressly decided, in *Kuehner* v. *City of Freeport*, 143 Ill. 92, where, speaking of a street railway in a street where a special tax had been levied for a street improvement, we said (p. 104):  "The railway is contiguous to the proposed street improvement, and falls within the designation of property that may be specially taxed for the making of the local improvement."   But it is claimed that the question whether the railway was "contiguous property" was not directly involved in that case, and therefore that the language thus employed cannot be quoted as authority.   It is true that in that case the city had attempted to combine a special assessment with special taxation, (a special assessment being levied upon the property of the street railway to the extent such property was deemed to be benefited by the improvement, and a special tax being levied upon all other contiguous property,) and that judgment was reversed because of the impropriety of combining the two methods of taxation in the same improvement.   But the language above quoted was properly used in the discussion of questions arising in the case, and even if it was unnecessary to the decision of that case, this court became committed to its soundness in the case of *Freeport Street Railway Co.* v. *City of Freeport*, 151 Ill. 451.   In that case the city, after its former proceeding had been declared invalid, passed an amended or supplemental ordinance, under which the special tax was re-assessed, the property of the railway company being treated in that proceeding as "contiguous property," and a special tax being levied upon it to the extent of the benefits resulting to it from the street improvement.   In the new assessment the language of this

court in its former decision was strictly followed, and on appeal by the street railway company from a judgment of the county court confirming the new tax imposed upon its property, we held that the tax was properly imposed and affirmed the judgment. On the authority of the two cases above cited, then, the rights of way of the two railway companies, the appellants in this case, must be held as "contiguous" to the streets proposed to be improved, and liable to be specially taxed as such.

It is insisted that the meaning of the phrase "right of way," as used in the ordinance, is not clear, and it seems to be argued that because of the ambiguity the tax should be held to be invalid. The sixth section of the ordinance provides that the cost of making so much of the improvement on the streets as is included in the right of way of any steam railroad, "being the space between the rails and one foot on the outside of such rails," shall be made and the cost thereof paid by special tax upon such right of way. It must be admitted that the phrase employed is not the most felicitous one that might have been employed as descriptive of the railroad property sought to be taxed, but in view of the ordinary use of these words we are of the opinion that no ambiguity is created which should defeat the tax. The manifest intention of the ordinance is, to impose the tax upon the tangible property of the railroad companies in the street, within the limits above mentioned,—in other words, upon that part of the tracks and road-beds of the railroad companies lying in the streets or parts of streets proposed to be improved.

It is contended, in the next place, that the ordinance is invalid because it provides that the special tax be levied, and orders it to be assessed and collected upon and from the rights of way. We see nothing improper in this. If it be admitted that the tax creates no lien capable of being enforced by sale of the property taxed, the law furnishes other remedies by which its payment

by the owners of the property may be compelled, and when payment is enforced in that manner we can not see why, in a sense perfectly legitimate, the tax has not been collected from the property. The ordinance does not attempt to indicate the mode of collection,—whether directly, by sale of the property taxed, or indirectly, by proper proceedings against the owner. As the latter would be the legitimate mode of collection, it doubtless was the mode contemplated by the ordinance.

The validity of the ordinance is questioned, in the next place, on the ground that the special taxation provided for lacks uniformity. It is insisted that the rule of apportionment of the tax applied to the property of the steam railroads, and also to the property of street railroads, is essentially different from that applied to the lots, blocks, etc., abutting upon the improvement. We are of the opinion that this difference is rather apparent than real. It is doubtless the rule that special taxes should be apportioned upon property within the taxing district upon the principle of uniformity. (*Davis v. City of Litchfield*, 145 Ill. 313; *Kuehner v. City of Freeport, supra.*) In the apportionment of these taxes to the lots and blocks abutting upon the improvement the application of this principle presents no considerable difficulty; but with railroad property, consisting of tracks and road-beds lying in and upon the street, the case is different. Manifestly the proportion of the tax to be imposed upon such property can not be ascertained by any computation of its frontage. Some other criterion must be adopted. It becomes a matter of fair and reasonable estimate, to be made in view of all the facts in the case. Such estimate must be made and applied by the proper municipal authorities, and when so made in the exercise of a reasonable discretion, the tax imposed will be presumed to represent the share of the tax to be borne by such railroad property upon the principle of uniformity. As we said in *Kuehner v. City of Freeport, supra* (p. 104): "Whether

the railway shall pay for paving between its tracks, as is sometimes done, or less or more, or whether the levy will be of a share or portion of the whole cost, and if so, how much, rests in the discretion of the municipal authorities, to be reasonably exercised." In that case the city, by its amended ordinance, levied upon the property of the street railway company a gross sum as its proportion of the special tax, and such levy was sustained as a sufficient compliance with the principle of uniformity. So here, the proportion of the tax imposed by the ordinance upon the property of the various railway companies, so long as there is nothing in the case tending to show that the discretion of the municipal authorities has been exercised unreasonably, will be deemed to be the fair proportion of the tax to be borne by the property of those companies upon the principle of uniformity.

What we have said also applies to the further objection that the tax upon the rights of way of the appellant railway companies is a mere arbitrary exaction. True, the information upon which the municipal authorities acted, and the precise mode in which they computed and apportioned the tax to be imposed upon these rights of way, are not specifically disclosed by the record; but they being the authorities to whom the law commits the apportionment, and they having made their estimate and assessment in apparent good faith, such assessment must be taken as the just and proper proportion of the special tax to be borne by the property upon which it is levied.

Other specific objections to the ordinance are raised, which seem to us to be no more than an elaboration, or a statement in a somewhat different form, of the objections already considered, and we do not deem it necessary, therefore, to discuss them further. After carefully considering the able briefs with which counsel have favored us, we are unable to see that any of the objections urged to the validity of the ordinance are tenable, and they must therefore be overruled.

A large number of points are raised, many of them exceedingly technical, in relation to the rulings of the court in the admission and exclusion of evidence, and in relation to the sufficiency of the oath taken by the commissioners, and of their re-cast of the assessment roll. We have given all the points thus made careful consideration, and fail to find that there was any material error committed by the court in those respects.   To adequately discuss the propositions thus presented would extend this opinion to an unwarrantable length, and, so far as we can see, would be of very little service in settling the law applicable to cases of this character.   All we need say is, that we find the record substantially free from errors that could have materially prejudiced the rights of the property holders who are seeking to contest the confirmation of the assessment.

It follows that the judgment of the county court confirming the assessment must be affirmed.

*Judgment affirmed.*