[No. 6119.   March 1, 1935.]

E. C. REYNARD, Appellant, v. THE CITY OF CALD-
WELL, IDAHO, a Municipal Corporation, and EMERY
L. VASSAR, as Mayor of Said City of Caldwell, Idaho,
and EMERY BALES, EDGAR L. OAKES, W. S.
BOYNTON, G. W. MONTGOMERY, G. N. FENRICH
and W. R. HOLLINGSWORTH, as Councilmen of
Said City of Caldwell, Idaho, and HARRY E. PAR-
MENTER, as City Treasurer of Said City of Caldwell,
Idaho, Respondents.

[42 Pac. (2d) 293.]

Delana & Delana and M. H. Eustace, for Appellant.

Cleve Groome and S. Ben Dunlap, for Respondents.

BUDGE, J.—Appellant, for himself and others similarly situated who might join in the proceedings, as purchaser and owner of bonds of Local Improvement District numbers 2 and 4 of the City of Caldwell, seeks to compel a reassessment by the City of Caldwell and its officials against the privately owned property in the districts to cover an insufficiency, namely: the balances unpaid, together with interest, originally assessed against the Boise Valley Traction Company, the Caldwell Traction Company, and certain real property of the City of Caldwell, basing his claim to right for reassessment on the ground that the original assessments against the traction companies and the city properties were illegal and void.

The improvement districts were organized for the purpose of paving certain streets within the city. On or about November 1, 1920, assessment-rolls for districts numbered 2 and 4 were approved and confirmed. In the assessments for benefits a levy was made against the Caldwell Traction Company in the sum of $604.71, and the Boise Valley Traction Company in the sum of $38,875.41, the said traction companies having franchises and street-car lines lying in the center of certain streets within the improvement districts, and having received their franchises with the stipulation that they would be required to pay for any paving constructed on the streets occupied by them to the extent

of the space between the rails of the tracks and two feet outside of said rails, and that the city could pave such portion of such streets and charge the expense thereof to the grantees of the franchises. Likewise the city assessed for benefits the total sum of $6,389.72, against property owned and occupied by the city as a City Library, City Park and City Garage.

The pleadings set forth that the Boise Valley Traction Company paid only $13,606.39, principal, and $8,299.91, interest, that the Caldwell Traction Company has paid nothing and that the assessments against the city properties were not paid and that said assessments against the city properties have been declared illegal and void by the district court, which decision was affirmed by this court. (*Reynard v. City of Caldwell,* 53 Ida. 62, 21 Pac. (2d) 527, 90 A. L. R. 1124.)

Respondents filed a general and special demurrer to, and motions to strike and quash, the alternative writ of mandate, and the trial court made and entered an order sustaining the general demurrer and the motion to quash the writ, and dismissing the action, from which order this appeal is prosecuted, appellant assigning as error the court's action in the three above-mentioned particulars.

We will discuss and dispose of what appear to be the important and controlling questions presented by the record.

We are agreed with appellant's contention that the special assessments levied against the property owned by the City of Caldwell were void and unenforceable and so determined to be in the decision in *Reynard v. City of Caldwell, supra.*

While the city council was without statutory authority to levy by ordinance special assessments against property owned by the city within the improvement districts for special improvements, thereby creating a lien against said property, it was empowered to expend from the general fund for such purposes such sums as, in its judgment, might be fair and equitable in consideration of benefits accruing to the general public by reason of such improvements, under the express provisions of I. C. A., section 49–2707, and this

court so held in *Reynard v. City of Caldwell, supra,* the court saying:

"In the event street improvements are made within a district, in which public property is situated, whereby the public property is specially benefited, naturally the general public would thereby be benefited. We believe that when the Legislature enacted the various statutes pertaining to municipal financing of street improvements, it had that in mind, and when it provided as in section 49-2707, I. C. A., 'that the city council or trustees may expend from the general fund for such purposes such sums as, in their judgment, may be fair and equitable in consideration of benefits accruing to the general public by reason of such improvements,' it thereby expressly provided a way or means by which the city could pay its fair and equitable portion of the cost of the improvements. That such expenditure was to be made of the general fund within the constitutional and statutory limitations and within the city council's discretion and good judgment . . . . "

There was, therefore, statutory authority by virtue of which the municipality could pay its fair and equitable portion, based upon benefits accruing to the general public by reason of the fact that its property was · specially benefited, of the cost of the special improvement to municipal property out of the general fund. This would seem to negative the theory that where public property is located within a special improvement district and is specially benefited by improvements made, and the benefits thereby accrue to the general public, the cost of such improvement may be shifted to the property in private ownership within the improvement district to make up a deficiency created by the failure of the municipality to adopt a proper method of making funds available for the payment of its fair and equitable portion of the cost of the special improvement. Such contention cannot be upheld for the reason that the property of the municipality is undoubtedly specially benefited in the same ratio that private property within the improvement district is specially benefited, and the

special benefits which accrue to the property of the municipality accrue to the general public and not alone to the property in private ownership within the improvement district. The cost of the special benefits accruing to the general public by reason of the fact that the property of the municipality has been specially benefited should be paid from funds raised by general taxation and is therefore payable out of the general fund within constitutional and statutory limitations and within the discretion and good judgment of the city council. I. C. A., sec. 49–2702, provides the bases for the assessment of the cost and expense of special improvements as follows:

"The assessment of the cost and expense or (of) any work or improvement provided for in section 3942 of Idaho Compiled Statutes and 49–1106 of Idaho Code shall be assessed upon the abutting, contiguous and tributary lots and lands, and lots and lands included in the improvement district formed, each lot and parcel of land being separately assessed for the full debt thereof in proportion to the number of feet of such lands and lots fronting thereon or included in the improvement district, and in proportion to the benefits derived to such property by said improvement sufficient to cover the total cost and expense of the work to the center of the street."

It would appear from the provisions of the foregoing section, a method having been provided for the payment of that portion of the cost and expense of a special improvement fairly and equitably chargeable to the general public, that the legislature did not contemplate that the private property within the improvement district was to be assessed for special benefits accruing to public property, for the reason that such statutory provision clearly contemplates each lot and parcel of land being separately assessed in the proportionate amount that the special benefits accruing to each lot or parcel of land bear to the total cost, and the statute provides that this proportionate amount is "in proportion to the number of feet of such lands and lots fronting thereon or included in the improvement district, and

in proportion to the benefits derived to such property by said improvement. In other words, this statute, I. C. A., section 49–2702, *supra,* provides for assessment of costs upon a lot or parcel of land in proportion to the special benefits accruing to such lot or parcel of land, and does not provide for an assessment out of, or without regard to, proportion to the special benefits to such lot or parcel of land.

The court in *Reynard v. City of Caldwell, supra,* uses language to the effect that the specific method provided for is exclusive and would preclude the city from adopting any other method to pay the city's fair and equitable portion of the costs of the improvement, the opinion reciting:

"The statute having provided a specific method by which the city could pay its fair and equitable portion of the costs of the improvement, such method would be exclusive, *Herman v. City of Omaha* [75 Neb. 489, 106 N. W. 593], *supra; Byrns v. City of Moscow, supra, and would preclude the city from adopting any other method,* or from levying special assessments against its own propery, where no statutory provision is made for it."

Conceding that there may be authorities to the contrary, we are not of the opinion that private property within an improvement district may be reassessed and be made liable for the payment of the cost of special improvements inuring to the benefit of public property and for the benefit of the public at large. (I. C. A., secs. 49–2702 and 49–2707; *Reynard v. City of Caldwell, supra; Bennett v. Seibert,* 10 Ind. App. 369, 35 N. E. 35, 37 N. E. 1071; *West Chicago Park Commrs. v. City of Chicago,* 152 Ill. 392, 38 N. E. 697, at 701.)

It is appellant's contention that the street railway companies within the improvement districts could not be validly assessed for the special improvements and that such assessments as were attempted to be made are therefore void, by reason of which fact appellant is entitled to a reassessment against all other property in private ownership in the im-

provement districts to take care of the deficiencies created. With this contention we are not in accord.

Article 11, section 11, of the Constitution of this state provides:

"No street, or other railroad shall be constructed within any city, town, or incorporated village without the consent of the local authorities having the control of the street or highway proposed to be occupied by such street or other railroad."

In *Trueman v. Village of St. Maries,* 21 Ida. 632, 123 Pac. 508, it is said:

"The constitution and laws of this state clearly confer right upon railway company to construct its railway within a city or village upon complying with the laws of the state, and also grant power and authority to cities and villages to pass ordinances granting right of way to railway company to lay its tracks and use, as a right of way, street within said city or village, and in all such cases both city or village and railway company must comply with provisions of the law and also ordinances of such village."

I. C. A., section 49–1117, specifically provides that municipalities have the power to provide for and regulate the passage of railways through streets and public grounds of a municipality.

Article 7, section 8, of our Constitution provides:

"The power to tax corporations or corporate property, both real and personal, shall never be relinquished or suspended, and all corporations in this state or doing business therein shall be subject to taxation for state, county, school, municipal and other purposes, on real and personal property owned or used by them, and not by this constitution exempted from taxation within the territorial limits of the authority levying the tax."

I. C. A., section 61–601, provides that the operating property of all railroads, including their franchises, are assessable for general taxation purposes, the twentieth syllabus by the court in *Oregon Short Line R. R. Co. v. Pioneer Irr. Dist.,* 16 Ida. 578, 102 Pac. 904, reciting:

"The power and jurisdiction of the state board of equalization with reference to the assessment of railroad property has reference to assessments made for general state, county and municipal purposes, and not to assessments made for local improvements."

In discussing and construing the foregoing constitutional provisions, particularly article 7, section 8, and I. C. A., section 61–601, *supra,* the court in *Oregon Short Line R. R. Co. v. Pioneer Irr. Dist., supra,* determines that the property of railroad companies is assessable and not exempt from assessments levied for local improvements, the opinion reciting:

"Yet, while the constitution created the state board of equalization, it also authorizes the legislature to invest in counties, cities, towns, or other municipal corporations the power to assess and collect taxes, and also provides that the power to tax corporate property shall never be relinquished or suspended; and that all corporations in this state shall be subject to taxation for state, county, school, municipal and other purposes within the territorial limits of the authority levying the tax. The legislature, therefore, having provided for the organization of an irrigation district and giving the power to such district to levy assessments within the territorial limits of the same, vested such district with the power to levy assessments for such local improvement, and such legislation was clearly authorized by the provisions of the constitution. This question is fully discussed and the authorities reviewed in the recent work of Page and Jones on Taxation by Assessment, Vol. 1, chapter 5."

We find no constitutional provisions exempting street railway companies from taxation. While the statutes may not provide in express terms that street railway property is assessable for special local improvement purposes, it has been provided that the operating property of all railroads, including their franchises, are taxable or assessable for general taxation purposes and we can see no logical reason, if they are taxable for general purposes and as other property within the state, why street railway property should not also

be taxable for special improvements within special improvement districts created by municipal authorities where their property is specially benefited thereby. If railroad property is subject to assessment for special improvements within an irrigation district no logical reason can be urged that would justify an exemption of street railway property from assessment for special improvements, based on benefits, in an improvement district of a municipality.

It is urged by appellant that the property of the railway companies does not fall within the classification, or is not such property as it provided to be assessed within the local improvement districts heretofore referred to. I. C. A., section 49–2702, provides as follows:

"The assessment of the cost and expense or (of) any work or improvement provided for in section 3942 of Idaho Compiled Statutes and 49–1106 of Idaho Code *shall be assessed upon the abutting, contiguous and tributary lots and lands, and lots and lands included in the improvement district formed, each lot and parcel of land being separately assessed* for the full debt thereof in proportion to the number of feet of such lands and lots fronting thereon or included in the improvement district, and in proportion to the benefits derived to such property by said improvement sufficient to cover the total cost and expense of the work to the center of the street."

It is generally held that the tracks, right of way and right of occupancy, or franchise, of a street railway company to use a portion of the streets of a municipality, is property which is benefited by a street improvement, to the extent of the space occupied by its roadbed and tracks, which renders the same liable for its proportionate share of its cost, just as the property of abutting property owners is liable. (25 R. C. L., sec. 36, p. 120; 44 C. J., sec. 2894, p. 532.)

"In the absence of any special provision in the charter of the street railway company requiring it to share its burden of paving the street which it occupies with its road, it is well settled by the weight of authority that the street rail-

way company, as well as any other property owner on the street, may be required to pay its pro rata part of the cost. It may be that the character of property belonging to the street railway is somewhat different from that of an abutting owner, but that a street railway company has property rights in a street which are subject to local assessment is supported by an almost unit of authority. They are abutting property owners in the sense of local assessment laws. They make a higher and different use of the street from that of any other occupant of same. Their franchise is valuable, and often exclusive. Gray's Limitation on Taxing Power, Secs. 1925–1933.'' (*Edwards Hotel & City R. Co. v. City of Jackson,* 96 Miss. 547, 51 So. 802.)

The following authorities also fully support the foregoing rule: *Chicago R. I. & P. R. Co. v. City of Moline,* 158 Ill. 64, 41 N. E. 877; *Chicago City Ry. Co. v. City of Chicago,* 90 Ill. 573, 32 Am. Rep. 54; *City of New Bern v. Atlantic & N. C. R. Co.,* 159 N. C. 542, 75 S. E. 807; *Commissioners of Chatham County v. Seaboard A. I. R. R.,* 133 N. C. 216, 45 S. E. 566; *Cicero & St. P. R. Co. v. City of Chicago,* 176 Ill. 501, 52 N. E. 866; *City of Durham v. Durham Public Service Co.,* 182 N. C. 333, 109 S. E. 40.

It is urged, however, that the franchise, right of way, right of occupancy and use, tracks, roadbed and such property of the street railway companies lying in the center of streets within the improvement districts cannot be said to be "lots and lands" and furthermore that such property does not come within the meaning of the words "abutting," "contiguous," "tributary" or other terms used in I. C. A., section 49–2702, *supra.*

It has been variously held that the right of way, or franchise, roadbed, tracks, easement, etc., of a street railway company in a public street is subject to special assessment for the improvement of the street because it is property which is "contiguous" (*Chicago etc. R. Co. v. Moline,* 158 Ill. 64, 41 N. E. 877; *Lightner v. City of Peoria,* 150 Ill. 80, 37 N. E. 69; *Kuehner v. City of Freeport,* 143 Ill. 92, 32 N. E. 372, 17 L. R. A. 774) ; "abutting property" (*Edwards*

*Hotel etc. R. Co. v. City of Jackson,* 96 Miss. 547, 51 So. 802; *Meryl Realty Co. v. Granite Bituminous Pav. Co.,* 284 Mo. 329, 223 S. W. 904; *Durham v. Durham Public Service Co., supra*). In *Amsbary v. City of Twin Falls,* 34 Ida. 313, 200 Pac. 723, the opinion defines the words ''contiguous,'' ''abutting,'' and ''tributary'' as used in I. C. A., section 49–2702, as follows:

''The terms 'abutting on' and 'contiguous' are synonymous, both conveying the idea that the lot borders on the improvement. (Webster's New International Dictionary; Century Dictionary; 2 Words and Phrases, p. 1495.) The word 'tributary' is not synonymous with 'abutting' or 'contiguous,' but is a broader term. Its meaning, as applied to the context, is 'paying or yielding tribute, taxed or assessed by tribute.' (Century Dictionary.) It is aptly used to connote the idea expressed in sec. 4005 that the improvement district shall include the lots to the center of the block, and clearly refers to the inside lots.''

It would appear that in any event the right of way of a street railway company, lying in the center of a street and within an improvement district, is ''property included in the improvement district formed,'' the word ''included'' having the meaning of embraced as a component part. (Funk & Wagnalls New Standard Dictionary; Black's Law Dictionary, 3d ed., p. 943.)

While there are authorities to the contrary, we are of the opinion that the property rights of a street railway company having a franchise for and its rails, ties, roadbed and track in a public street within an improvement district can be logically said to be ''lands'' within the meaning of that term as used in I. C. A., section 49–2702. It has been variously held that the tracks and franchise of a street railway company, when considered in connection with statutes referring to the assessment of lands within special improvement districts, are ''land'' (*City of Cleveland v. Cleveland etc. R. Co.,* 4 Ohio Dec. (Reprint) 304, 1 Clev. Law Rep. 304), ''real estate'' (*City of New Haven v. Fair Haven*

*etc. R. Co.*, 38 Conn. 422, 9 Am. Rep. 399), and "real property" (*In re North Beach & M. R. Co.*, 32 Cal. 499).

"The word 'land' has, in law, a well settled, and a legal meaning. The word is a term of art, but it may be used in different senses. At common law, it has a twofold meaning. It may be used in a general or a limited sense. In its general sense the term is broad and comprehensive, of very extensive signification, of very wide meaning, and is considered as *nomen generalissimum*.

" . . . . Thus, technically, and as considered under 'things real' land signifies everything. which may be holden; and the term is defined as comprehending all things of a permanent and substantial nature, and even of an unsubstantial, provided they be permanent. Land includes solid material of the earth, whatever may be the ingredients of which it is composed, any ground, soil or earth whatsoever, it has also been said to include fields, and arable meadows, pastures, woods, moors, waters, marshes, furzes and heath. It includes, not only the face of the earth, but everything under it or over it, and has in its legal signification an indefinite extent upward and downward, giving rise to the maxim, *Cujus est soleum ejus est usque ad coelum*. It includes, not only the soil or earth, but also things of a permanent nature affixed thereto, whether by nature or by the hand of man. So it includes those natural products such as growing trees, grass, herbage, and other natural or perennial products of the land, and even growing crops, before maturity and unsevered from the soil, although usually crops which are the annual products of industry and agriculture are regarded as personal property. It also includes structures of a permanent character erected upon the land, such as buildings, fixtures, fences, bridges, as well as works constructed for the use of water, such as dikes, canals, flumes, mill races, and reservoirs. A shed erected upon a pier has been held to be 'land.' " (50 C. J., secs. 23, 24, pp. 751–753.)

"The term (land) may also be used interchangeably with 'property'; it may include anything that may be classed as

'real estate' or 'real property'; and it may include any estate or interest in lands, whether a fee or less than a fee, a remainder in fee, either legal or equitable estates or interests, easements, incorporeal hereditaments, . . . . '' (50 C. J., sec. 26, p. 754.)

We conclude that the franchise, roadbed, tracks and such property of the street railway companies, lying within the improvement districts, is abutting, contiguous, tributary or included lands within the meaning of I. C. A., section 49–2702, that such property was substantially benefited by the improvements made within such improvement districts, and was subject to assessment based upon benefits accruing. To hold otherwise, land owners within the improvement districts whose property has been assessed for the improvements, and, in numerous instances, no doubt, paid in full, and in others, paid in part, would be reassessed in the instant case in approximately the sum of $60,000 after the expiration of approximately fourteen years to pay an obligation, part of which is general in its nature and beneficial to the public at large and the remainder of which is a benefit to the property of private corporations, and neither of which benefits inure specially to private owners.

As we understand the situation the original assessments were sufficient to pay the costs of the improvements had the assessments against the city property and the street railway properties been valid assessments. The assessments against the city property were invalid as no statutory authority existed therefor, the statute expressly providing that all improvements made within an improvement district specially benefiting city property were payable out of the general fund. (I. C. A., sec. 49–2707.) Knowledge of such statutory provision will be imputed to the purchasers of said bonds; all persons are presumed to know the extent of the powers of a municipal corporation and they act at their peril. (43 C. J., sec. 199, p. 203; 44 C. J., sec. 2130, p. 74, sec. 2151, p. 81; *Weaver v. San Francisco,* 111 Cal. 325, 43 Pac. 972; *Budge v. City of Grand Forks,* 1 N. D. 309, 47 N. W. 390, 10 L. R. A. 165.)

█ Since the assessment against the street railway companies was a valid assessment when made, no reassessment can be validly imposed upon the private property within the improvement districts under the provisions of I. C. A., section 49–2726.

From what has been said it follows that the judgment must be affirmed and it is so ordered. Costs awarded to respondent.

Holden, J., and Koelsch, D. J., concur.

Givens, C. J., and Morgan, J., dissent.

Petition for rehearing denied.