## MERYL REALTY COMPANY v. GRANITE BITUMINOUS PAVING COMPANY, Appellant.

### Division One, July 19, 1920.

1. **DEED TO RAILROAD: Acquired by Street Railway: Determinable.** The right acquired by unrestricted deed by a street railway from a railroad company to which was conveyed the fee to a strip of land, is as broad as that of the railroad company, the original grantee; and whether said right is determinable is not suggested in this suit on street improvement tax bills, and is not therefore considered; for whether determinable or not, it has not been abandoned and is still claimed by the street railway company.

2. **STREET IMPROVEMENT: Abutting and Fronting: Definition.** The words "fronting or abutting," used in the statute relating to street paving, have distinct and separate meanings, and together they indicate that the Legislature intended to include all lands bordering on any part of the street to be improved. "To abut," in its most ordinary sense, is to border on, and "abutting" means adjoining; and the two words "fronting or abutting" imply lands other than those lots which front on one side of a street.

3. ———: **Railroad Right of Way: In Middle of Street: Benefit Assessment.** A strip of ground thirty feet wide in the middle of a street, conveyed in fee to a railway company as a right-of-way and roadbed, is, under the statute (Sec. 9254, R. S. 1909), chargeable with its proportionate part of the cost of paving two strips of the street, one on each side of the right-of-way and each ten feet and a half wide; and tax bills, issued to the contractor in payment for paving said two strips and assessed against the lots fronting thereon alone for the entire cost, are void.

4. ———: ———: ———: ———: **Owner in Fee.** A railway company which has deliberately elected to purchase a strip of ground thirty feet wide from a private owner in fee, for its exclusive use as the right-of-way for its tracks, in the middle of a wider tract the balance of which is about to be dedicated. by the owner to public use as a street, stands precisely, after said street is established and the city undertakes to pave the two strips of street on each side of the right-of-way, as it would have stood had the entire street been dedicated along one side of the said right-of-way.

5. ———: **Assessment Againt Street Railway..** The statute (Sec. 9254, R. S. 1909) in reference to the assessment of the cost of a street improvement makes no distinction between a railroad and a street railway. The tax is a charge upon the land adjoining the street owned by any kind of a railroad corporation.

Appeal from St. Louis City Circuit Court.—*Hon G. A. Wurdeman*, Judge.

AFFIRMED.

*Sturdevant & Sturdevant* and *Charles A. Powers* for appellant.

(1)  The cost of the improvement is chargeable against the lots and tracts of land fronting or abutting upon the part of the street improved, in proportion to the number of fronting or abutting feet. Laws 1911, pp. 337-8.  (2)  The deed from the Cartan Real Estate Company vested in said railroad corporation a right-of-way for railroad uses only in the said thirty-foot strip during the period only of its use thereof for railroad purposes; and the interests of such railroad in said land has never been and is not now more than an easement and right-of-way. Sec. 3049, art. 2, ch. 33, R. S. 1909; Kellogg v. Malin, 50 Mo. 496; State ex rel. v. Road Co., 207 Mo. 85;  Railroad v. Sandlin, 173 Mo. App. 384. (3)  The deed clearly  reserves the right to dedicate to public use a street sixty feet wide, and the dedication following clearly dedicates a street  sixty feet wide; and there is nothing in the language of the instrument to point or imply an intention of the parties to vest the railroad with more  than a right-of-way for its use,  when

the granting and *habendum* clauses are both considered in connection with the reservation in regard to the sixty-foot street. Linville v. Greer, 165 Mo. 380; Carrett v. Wiltse, 252 Mo. 1. c. 712. (4) In the deed the grantor reserves the right to dedicate a street sixty feet wide, of which the railroad right-of-way should be the center; and it subsequently filed a plat and dedication of Cartan Avenue sixty feet wide to public use, subject only to the right-of-way previously granted said railroad company. Adjoining or abutting property within the meaning of the statute above, is property which adjoins or abuts laterally upon the street proper which, in this instance. is the sixty-foot strip dedicated as aforesaid, as Cartan Avenue; and the above statute designating the property which shall pay the cost of a public improvement of this kind did not contemplate and does not include a rail-road right-of-way lying wholly within, and being a part of, the street itself, because such strip of ground does not front or abut upon Cartan Avenue, the street improved. Indianapolis Ry. Co. v. Capitol Paving Co., 24 Ind. App. 114; South Park Comr. v. Chicago Ry Co., 107 Ill. 105; O'Reilley v. City of Kingston, 114 N. Y. 439; Oshkosh Ry. Co. v. Winnebago Co., 89 Wis. 435; 1 C. J. p. 376.

·*William Hilkerbaumer* for respondent.

(1) The·strip of land used by the railroad company as a right-of-way, whether owned by it in fee simple or for use as a right-of-way, subject to reversion in case of abandonment, is subject to special improvement taxes when fronting or abutting on the proposed improvement along the distance improved. R. S. 1909, sec. 9254, as amended by Act of 1911, Laws 1911, p. 337; 4 Dillon on Mun. Corp. (5 Ed.) sec. 1451; Heman Const. Co. v. Wabash Railroad, 206 Mo. 172; Gilsonite Const. Co. v. Railroad, 240 Mo. 650; Railroad v. Paving Co., 197 U. S. 430; Shreveport v. Shreveport Traction Co., 134 La. 568; Des Moines Railroad v. Des Moines, 159 N. W.

450; City of Kankakee v. Ill. Central Railroad, 258 Ill. 368. (2) The grant contained in the deed is a grant of the fee-simple title to the strip in controversy. R. S. 1909, sec. 3316; Polebetzke v. Week Lbr. Co., 157 Wis. 377; Wiehe v. Lorenz, 254 Ill. 195; Newpoint Lodge v. Town of Newpoint, 138 Ind. 141; Barker v. Barrow, 138 Mass. 578; German Ev. P. Congr. v. Schreiber, 209 S. W. 914. (3) Even though it be held that the deed does not convey the fee-simple title, the strip is clearly a private right-of-way, and constitutes property abutting or fronting upon the proposed improvement, and as such is subject to special improvement taxes. R. S. 1909, sec. 9254, as amended in 1911, Laws 1911, 337; Des Moines Railroad v. Des Moines, 159 N. W. 450; Shreveport v. Shreveport Traction Co., 134 La. 568; City of Kankakee v. Ill. Central Railroad Co., 258 Ill. 368. (4) It is only when the right-of-way, if such it may be called, consists of the right to lay tracks in a public street that such right-of-way can be said not to front or abut upon a proposed improvement. S. Park Com. v. Chicago Railroad, 107 Ill. 105; Ind. & Vincennes R. R. Co. v. Capital Paving Co., 24 Ind. App. 114. (5) There having been no abandonment of its right-of-way, there can be no question of a reversion in this case. Des Moines Railroad v. Des Moines, 159 N. W. 450. (6) "Abut" means adjoining, or where there is no intervening land. People v. Willison, 237 Ill. 584; Millan v. Charitan, 145 Iowa, 648.

BROWN, C.—This suit was instituted in the Circuit Court of St. Louis County, December 22, 1916, for the purpose of cancelling certain tax bills issued to defendant corporation by the City of Maplewood for the paving, curbing and guttering of Cartan Avenue in said city, on the ground that, while regular on their face, they are in fact void and constitute a cloud upon plaintiff's title to the lands against which they were issued, which consists of a great number of lots fronting upon said

street between Big Bend road and Laclede Station road, where the work was done.

These tax bills amount, in the aggregate to $11,069. 96, and were issued and delivered to the defendant corporation August 14, 1915. Their cancellation is asked on three distinct grounds: (1) That a strip of land thirty feet wide, extending through the middle of the street throughout the entire distance covered by this work and the contract therefor, was not included in the assessment, nor charged with any part of the costs; (2) because the work was neither begun nor finished until long after the time specified in defendant's contract with the city and the ordinance by which it was authorized, and (3) because the assessment made was unreasonable, oppressive and confiscatory. No question is made as to the sufficiency of the petition to state the facts relied on by plaintiff as they were developed in evidence, and it is therefore unnecessary to notice it further.

The facts are as follows: The City of Maplewood is a city of the third class existing in that capacity during all the time covered by this case. By deed dated December 24, 1896, the Cartan Real Estate Company, a corporation, owning the land, conveyed to the St. Louis & Meramec River Railroad Company, the thirty-foot strip in question here, in the following words:

"This deed, made and entered into this 24th day of December, 1896, by and between the Cartan Real Estate Company, a corporation of the State of Missouri, party of the first part, and the St. Louis & Meramec River Railroad Company, a corporation of the State of Missouri, party of the second part:

"Witnesseth, that the said party of the first part, in consideration of the sum of one dollar, to it paid by the said party of the second part, the receipt of which is hereby acknowledged, does by these presents, grant, bargain and sell, convey and confirm unto the said party of the second part, for a right-of-way and roadbed, a strip of ground thirty feet wide in United States Survey

2844, in the County of St. Louis, State of Missouri, and correctly represented on the foregoing and above plat by pink shading, with privilege to place poles for carrying the necessary overhead wires of said railroad outside of said right of way and within ten feet of either side of same, the strips in which this privilege is granted are correctly represented on the foregoing and above plat by blue shading.

"The said party of the first part reserves the right at any time to dedicate to public use, when graded as a street, a strip not less than sixty feet wide, the outer lines of said strip to be equi-distant from and parallel with the center line of said right of way. Said public use as a street, when dedicated, to apply to all the space from the outer limits of the strip so dedicated to the outer ends of the ties under the tracks of the second party, but said dedication shall be subject to the right-of-way use for roadbed and privilege herein granted to the party of the second part, said party of the second part agrees that no fences or other obstructions will be placed at the sides or edges of said strip shaded in pink, and in case any intersecting streets shall hereafter be made or dedicated then and in that case free passageway across said right of way and tracks shall be maintained by said party of the second part.

"To have and to hold the same unto the said party of the second part and unto its successors and assigns forever, for right of way for railroad use as roadbed for said railroad, privilege to place poles for carrying the necessary overhead wires."

Attached to and forming a part of this deed was the plat mentioned. The strip shown thereon was the same as now occupied by the railroad. It is more than one thousand seven hundred feet long with no street crossing it. Afterward the Cartan Real Estate Company filed its plat of Cartan Subdivision containing the following dedication: "Cartan Avenue, 60 feet wide, shown in etching, is hereby dedicated to the public use

forever, subject to the right of way and other conditions and stipulations described in deed of Cartan Real Estate Company to the St. Louis & Meramec Railroad Company, recorded in Book 94, page 619, St. Louis County records.''

It is assumed in argument and not questioned, that the grantee in the foregoing deed was a railroad company organized under the laws applicable to such corporations, and that before the beginning of the proceedings resulting in these tax bills the property had been acquired and occupied by the United Railways Company, a street railroad corporation which maintains and operates its double-track street railway thereon. No street has ever been located across this strip, but the railroad company has filled its track with crushed rock so that it can be crossed by vehicles in one place.

These tax proceedings began with the passage by the City of Maplewood of Ordinance Number 506, the relevant provisions of which are as follows:

"Section 1. That the roadway of Cartan Avenue in the City of Maplewood, between Big Bend road and Laclede Station road, be brought to the established grade, including the squares and areas formed by the meeting of said street with other streets and public places, and improved in the following manner, namely: By constructing on each side of the roadway a combined Portland cement concrete curb and gutter 6 by 24 inches and paving the roadway between the outside of each gutter and a point one foot outside of the outside rail of the street car tracks of the St. Louis & Meramec River Railroad Company, its successors and assigns, at the present time occupying the center of said street on each side, by preparing the roadway for the superstructure and laying first a course of Portland cement concrete five inches thick, upon which shall be laid a surface or wearing course of bithulithic pavement two inches in thickness, and constructing all the necessary storm-water sewers, inlets, catch basins and other appurtenances for said street.

"Section 2.   The above described work of improvement shall be begun by the successful bidder within ninety days after signing of a proper contract and filing and having his bond approved, and shall be carried on to its completion within ninety days from the date of beginning, unless the time shall be extended by the council by ordinance, said work to be done in strict accordance with the plans and specifications filed for said street by the city engineer, which are hereby approved and adopted, and shall further be done in accordance with the terms and provisions of the contract hereafter to be embodied in an ordinance and shall be subject to the provisions of the laws of the State of Missouri affecting improvements in cities of the third class and with the provisions of the general ordinances of the City of Maplewood."

Section 6 provided for the execution by the successful bidder for the work, of a contract and bond for its faithful performance.

Section 7 is as follows:

"The St. Louis & Meramec River Railroad Company, its successors and assigns are hereby requested to bring to the established grade of said street the space occupied by their tracks and ties, and pave the said space so occupied and used by them in the same or equally as good a paving as that herein provided for the paving of the remainder of the roadway of said street."   The contract was executed and the bond approved February 19, 1914.

On July 20, 1914, the defendant wrote to the mayor and council of the city as follows:

"We would thank you to give us an extension of time on the contract covering the improvement of Cartan Avenue from Laclede Station road to Big Bend road.  Owing to a controversy between the city and the street railway company regarding the paving of their right of way, it has been impossible for us to commence the work on the improvement of Cartan Avenue, and we

would thank you to grant us an extention of 90 days."
On this letter an extension was granted to November
18, 1914. On October 28, 1914, the defendant again wrote
the mayor and council as follows:,

"We would thank you to grant us an extension of
time on the contract covering the improvement of Cartan
Avenue from Laclede Station road to Big Bend road.
It has been impossible for us to start the work of im-
provement of Cartan Avenue on account of the con-
troversy between the city and the street railway com-
pany regarding the improvement of their right of way
on Cartan Avenue, and would thank you to grant us an
extention of 90 days on this contract."

The council again extended the time for the com-
pletion of the work for ninety days. On the following
day the council extended the time for the completion of
the work until April 1, 1915. On March 19, 1915, defend-
ant made another application for extension, giving the
same excuse for its failure to complete the work as in
its first application and added, "We understand from
Mr. Jones, your city attorney, and also from Mr. Shinkle,
your city engineer, that there will soon be a definite un-
derstanding between the city and the street railway
company, which will permit our carrying out our con-
tract to improve this street, and you may be sure that
we will commence the work at the earliest possible time,
and rush same to completion." An extension was grant-
ed to July 31, 1915, and on July 27th the work was com-
pleted and received by the city.

The testimony shows that the improvement for
which these tax bills were issued consists of a curb and
gutter on each side of the street, and ten feet and six
inches of pavement on each side extending from the
gutter to the railroad tracks; that these tracks do not
conform to the grade of the pavement; that there is no
room on the strip of pavement on each side of Cartan
Avenue for vehicles to pass one another; that a vehicle
standing in front of a house, of which there are quite

284 Mo.—22

a number, would make it impossible for another vehicle to pass that point, and that there is only one place in the seventeen hundred feet included in this work where the railroad company has filled its track so that vehicles can pass across it.

I. The first and most important question presented is whether the railroad right of way, consisting of a strip thirty feet wide along the center line of Cartan Avenue, is subject to assessment for this improvement. Assessments This depends upon the provisions of Section Against 9254, Revised Statutes 1909, as amended by Railway. the Act of April 3, 1911 (Laws 1911, p. 337).

It is evident that the title of the railroad company stands at the door of the inquiry. It did not originate in permission of the city to lay its rails and operate its cars upon a public street, for there was no public street there. It was acquired by voluntary grant from a private owner, the Cartan Real Estate Company, years before the street was dedicated. The deed by its terms conveyed the fee. Whether this was determinable or not by the failure of the purpose of the grant makes no difference, because there is no suggestion that it has been so determined. Some suggestion is made that this use has been changed by a change in the character of the ownership; that whereas the thirty-foot strip was origiginally conveyed to a railroad company the possession has since passed by some unmentioned process to a street railroad company. While this does not appear in the record it is tacidly admitted in argument, although it is not denied, that the present owner is seized of all the title which passed by the deed of the Cartan Real Estate Company, so far as it is authorized by law to hold and use the land for its corporate purposes. Its right to acquire the land is as broad as that of the original grantee. [R. S. 1909, sec. 3316.] The present owner is therefore seized in fee of this thirty-foot strip of land for the uses incident to its incorporation to the extent indicated by the terms of its deed, and also of an easement

for the purpose of setting its poles on the land immediately adjoining it. This is clearly stated in the *habendum* as follows: "To have and to hold the same unto the said party of the second part and unto its successors and assigns forever, for right of way for railroad use as roadbed for said railroad, privilege to place poles for carrying the necessary overhead wires."

The deed reserves the right to dedicate the sixty-foot strip now described as Cartan Avenue, such dedication "to apply to all the space from the outer limits of the strip so dedicated to the outer ends of the ties under the tracks of the second party." This deed, which is copied in full in our statement, seems to be the product of infinite pains to avoid the inference of any right of the city to interfere in any manner with the thirty-foot strip in question. The right to dedicate, and the dedication itself, applied only to two distinct strips of land lying on either side of the right of way between the ends of the ties of the railway company and the boundary of the street. The dedicator had no title in the right of way and the dedication did not purport to include it.

The ordinance under which this improvement was made carefully conformed to the condition of the title as we have stated it. It provided for "paving the roadway between the outside of each gutter and a point one foot outside of the outside rail of the street car tracks of the St. Louis & Meramec River Railroad Company, its successors and assigns, at the present time occupying the center of said street on each side." It will be seen that this provides for two distinct roadways: one on each side of the railroad strip, each of which would be almost useless for the purpose of travel, because there was no room for vehicles to pass each other or to pass a vehicle standing in front of a residence on the street. Each strip was a third of a mile in length. It appears from the record that the ordinance was passed in that form in expectation that some arrangement could be made for the pavement

of that half of the street covered by the railroad tracks, and more than a year was spent in unsuccessful effort to accomplish that result. The time for beginning to work passed without anything having been done, and before the time set in the ordinance for completion the council extended the time and continued to extend it until the following summer when, the negotiation having failed, the city's part of the work was begun and completed, and this assessment was made by charging it to the owners of property on each side of the hybrid street to the exclusion of the railway property in the middle. The propriety of this assessment must be determined by the provisions of the statute under which it was made.

Section 9254, Revised Statutes 1909, as amended by the Act of 1911 (Laws 1911, p. 338), relating to cities of the third class, provides that the "cost of paving, guttering and otherwise improving any alley and the roadway part of any street, that is the part between curb lines, including street intersections, shall be charged against the lots and tracts of land fronting or abutting on the street or alley so improved along the distances improved, in proportion to the number of fronting or abutting feet." Did this provision stand alone we might well speculate upon its exact meaning in this connection. The use of the expression "fronting or abutting," words having distinct and separate definitions, indicates that the Legislature intended to include all lands bordering on any part of the street covered by the improvement. The fact that this railroad property is no part of the street, but borders on each of the two portions improved, is worthy of notice. Without any connection between them, they are united by name only. Were one of them named North Cartan Avenue and the other South Cartan Avenue the situation, from a legal standpoint, would be the same. It is made plainer by the substitution of the word "improvement" for the words street or alley in the following provision of the same section: "All lands owned by any county, or city, and all other public lands,

cemeteries and railroad rights of way, fronting or abut-
ting on any of said improvements shall be liable for
their proportionate part of the cost of such improve-
ment.'' To abut is, in its most ordinary sense, to border
on, and abutting means adjoining, and this right of way
abuts on both lines of this improvement its entire
length. Did the improvement consist of a single line
of paving along which the private right of way of the
railroad extended no one could doubt the liability of
its owner to taxation under the express words used in this
statute, yet there would be nothing in principle to dis-
tinguish that situation from the one before us.

In this case the railway company has deliberately
elected to purchase its right of way from the private
owner of the land in fee for its own exclusive use. It
stands precisely as it would have stood had the entire
street been afterward dedicated upon and along one side
of it. Had it acquired the same right of way from the
city after the dedication of the street it might have been
burdened with such duties of improvement and repair
as the city saw fit to impose, but this transaction would
seem to have been made for the purpose of obtaining all
the advantages of a street location without any of its
burdens. It had the choice to come into the street for
all purposes or to remain out of it for all purposes, and
chose the latter course and became an adjoining pro-
prietor with all the burdens incident to that relation.
One of them is participating in the burden of taxation as
an abutting proprietor with reference to this improve-
ment and we hold that it is so liable to the same extent
as if it had been incorporated for horticultural purposes
and the land had been conveyed to it for use as an or-
chard.

II. It is suggested by appellant in argument that
the provisions of the statute with reference to the assess-
ment of the cost of these improvements against railroad

Street Railway.    rights of way do not apply to street rail-
ways, and that the owner of this right of

way is a street railway company and that its road is a street railway. While this does not appear in the record it may be the fact. But the statute makes no such distinction. It applies alike to all lands owned by railroad corporations for use as right of way, and we can see no ground for the distinction. The tax is chargeable upon the land as such, and relates in no way to the character of the business of the company operating the railroad for which it is used. The status in this respect of a railroad operated by permission upon a public street is not involved here, but only the taxation of lands owned and used for that purpose.

III. Having arrived at the conclusion stated it is unnecessary to consider whether or not the ordinance which we think is shown by the record to have been **Delay.** passed for the purpose of joining with the railroad company in paving the entire sixty feet is sufficient to authorize this fragmentary improvement after more than a year spent in ascertaining that the company would not join in the work. We do not therefore express any opinion either as to the reasonableness of the ordinance or effect of the delay in beginning the work. The judgment of the Circuit Court for St. Louis County is affirmed.

*Ragland, C.,* concurs: *Small, C.,* not sitting.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.