GRANITE BITUMINOUS PAVING COMPANY, Appellant, v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY ET AL.—55 S. W. (2d) 468.

Division One, December 20, 1932.

Bryan, Williams, Cave & McPheeters and Charles A. Powers for appellant.

*T. E. Francis* and *Barth & Baron* for respondents.

STURGIS, C.—By this suit plaintiff seeks to enforce the lien of a special tax bill for street improvement in paving Cartan Avenue in Maplewood, a city of the third class, in St. Louis County, against a "strip of land 30 feet wide along the center line of Cartan Avenue, from the center line óf Laclede Station road to the west line of Big Bend road." This is the description given in the tax bill sued on and the petition merely enlarges this description by locating the 30-foot strip in United States Survey 2844 and within the corporate limits of Maplewood, Missouri, and "lying and being in the center of Cartan Avenue, a public street, and extending from the center line of Laclede Station road to the west line of Big Bend road, in said city," and also as "being the same strip of land conveyed to St. Louis & Meramec River Railroad Company by the Cartan Real Estate Company" by a certain recorded deed, and shown on the plat of Cartan Subdivision as a "strip 30 feet wide in the center of Cartan Avenue." The length of this strip is approximately 1700 feet.

This case, therefore, presents the novel proposition of enforcing a special tax bill for street improvement against a thirty-foot strip of ground in the middle of the improved street. The street is shown on the plat of the city and by the evidence and in all the proceedings had to improve the same as being sixty feet wide, so that there is a strip of street fifteen feet wide on either side of the thirty-foot center strip sought to be taxed. This is largely occupied by sidewalks. It is also shown that this thirty-foot strip is occupied by two parallel lines of street railroad now owned and operated by the defendant United Railways Company, which acquired same after the street improvement was made.

This situation was brought about in this way: The Cartan Real Estate Company owned a large tract of land which it later platted as Cartan Subdivision, an addition to the city of Maplewood, but before doing so it sold and conveyed, by the usual granting clause of a warranty deed, to the St. Louis & Meramec River Railroad Company, the thirty-foot strip of ground now in question "for a right of way and roadbed . . . with privilege to place poles for carrying the necessary overhead wires of said railroad outside of said right of way and within 10 feet of either side of same." Said deed also contains this provision: "The said party of the first part reserves the right, at any time, to dedicate to public use, when graded, as a street, a strip not less than 60 feet wide, the outer lines of said strip to be equidistant from and parallel with the center line of said right of way. Said public use as a street when dedicated, to apply to all

the space from the outer limits of the strip so dedicated to the outer ends of the ties under the tracks of the second party, but said dedication shall be subject to the right of way, use for roadbed and privilege herein granted to the party of the second part. Said party of the second part agrees that no fences or other obstructions will be placed at the sides or edges of said strip, and in case any intersecting streets shall hereafter be made or dedicated, then and in that case a free passageway across said right of way and tracks shall be maintained by said party of the second part.''

The use of this strip of ground for a railroad right of way began at that time, 1896, and three years later the plat of Cartan Subdivision was executed and recorded. It recites that ''Cartan Avenue 60 feet wide, shown in etching, is hereby dedicated to the public use forever, subject to the right of way and other conditions and stipulations, described in deed of Cartan Real Estate Company to the St. Louis & Meramec Railroad Company, recorded in book 94, page 619, St. Louis County records.'' This plat merely shows a street 60 feet wide marked Cartan Avenue, extending east and west from Big Bend road to Laclede Station road, and lots with 50-foot frontage on each side.

Not much is shown as to the manner and extent of the use of Cartan Avenue prior to 1913, but at that time steps were taken by the city of Maplewood to improve this street by grading, paving, guttering, and curbing same. A resolution to grade and improve Cartan Avenue was duly passed, in which it is set forth that the city deems it necessary to grade Cartan Avenue from Big Bend road to Laclede Station road ''for the full width except such portions of said street as are occupied by the tracks and ties of the St. Louis & Meramec River Railroad Company, or their assigns, and to improve the same by preparing the roadbed for the superstructure and laying a roadway paving thereon for a width of 9 feet 2 inches between the outside rail of the street railway tracks and the gutter on each side, . . . and by constructing upon each side of the roadway of said street a combined curb and gutter of granitoid 24 inches wide. . . . The said grading shall be done at the expense of the owners of the property abutting upon said improvement, and shall be included in the same contract with the paving and the cost thereof levied as a special tax against said property.''

An ordinance was thereupon duly enacted providing for grading and paving Cartan Avenue in much the same terms as the resolution and specifying the construction of a curb and gutter of two feet ''and paving the roadway between the outside of each gutter and a point one foot outside of the outside rail of the street car tracks of the St. Louis & Meramec River Railroad Company, its successors and assigns, at present occupying the center of said street.'' As payment for

same, it is provided that "the whole cost of improving said street as herein provided shall be levied as a special assessment against the property abutting upon either side of said street between the points named to pay for the same as in the manner provided by statute, and upon the completion and acceptance of the work of improvement of said street special tax bills shall be issued therefor against each lot, tract or parcel of ground abutting upon said improvement, which said tax bills shall be delivered to the contractor in full payment for said work, and in no event shall the City be liable for any part of the cost thereof." Section 7 of said ordinance reads: "The St. Louis & Meramec River Railroad Company, its successors and assigns are hereby requested to bring to the established grade of said street the space occupied by their tracks and ties and to pave the said space so occupied and used by them in the same or equally as good a paving as that herein provided for the paving of the remainder of the roadway of said street." The railroad company declined to comply with this request.

The plaintiff herein contracted with the city to make these improvements and in the contract and ordinance it is provided that on completion and acceptance of the work the city council "shall thereupon by ordinance levy and assess the same as a special tax against each lot, tract or parcel of ground fronting or abutting upon or along the said Cartan Avenue between Big Bend road and Laclede Station road, in the name of the owner or owners thereof."

There was considerable delay in having the improvements made, caused by the fruitless effort of the city to get the railroad company to grade and pave its right of way. The work was completed in 1915, accepted by the city, and an ordinance was passed July 28, 1915, "levying a special assessment against all the lots, tracts and parcels of ground on each side of Cartan Avenue, and abutting thereon," for the total cost of the improvement, and directed the city council to issue special tax bills "against the respective owners of property abutting on said improvement, specifically setting out the owners of each lot and the subdivision thereof, and giving the block, front foot price separately for the grading and paving and for the curb and gutter, with the total amount thereof separately, all agreeing in detail with the report of the engineer."

No tax bill was then issued against this thirty-foot strip, the railroad right of way now in question, and it was not taken into account in apportioning the costs of the improvement against the lots, tracts or parcels of land fronting or abutting on Cartan Avenue. The entire sixty feet designated on the plat of Cartan Subdivision as Cartan Avenue was taken as being the improved street, and the lots fronting on the north and those fronting on the south of this sixty-foot street were

taken as being the only lots, tracts or parcels of land fronting or abutting on Cartan Avenue.

The tax bills so issued to this plaintiff were the subject-matter of the case of Meryl Realty Co. v. Granite Bituminous Paving Co., which reached this court on appeal and is reported in 284 Mo. 329, 223 S. W. 904. In that case the owner of a number of platted lots fronting on Cartan Avenue against which tax bills had been issued to this plaintiff in payment for this improvement, brought suit to have same adjudged void on the ground, among others, that ''a strip of land thirty feet wide, extending through the middle of the street throughout the entire distance covered by this work (street paving) and the contract therefor, was not included in the assessment, nor charged with any part of the costs.'' It was also claimed that the assessment as made was unreasonable, oppressive, and confiscatory. This court sustained the first of these contentions and declared the tax bills void.

As to this thirty-foot strip along the center of the street, this court said: ''It is evident that the title of the railroad company stands at the door of the inquiry. It did not originate in permission of the city to lay its rails and operate its cars upon a public street, for there was no public street there. It was acquired by voluntary grant from a private owner, the Cartan Real Estate Company, years before the street was dedicated. The deed by its terms conveyed the fee. . . . The present owner is therefore seized in fee of this thirty-foot strip of land for the uses incident to its incorporation to the extent indicated by the terms of its deed, and also of an easement for the purpose of setting its poles on the land immediately adjoining it. . . . The deed reserves the right to dedicate the sixty-foot strip now described as Cartan Avenue, such dedication 'to apply to all the space from the outer limits of the strip so dedicated to the outer ends of the ties under the tracks of the second party.' This deed, which is copied in full in our statement, seems to be the product of infinite pains to avoid the inference of any right of the city to interfere in any manner with the thirty-foot strip in question. The right to dedicate, and the dedication itself, applied only to two distinct strips of land lying on either side of the right of way between the ends of the ties of the railway company and the boundary of the street. The dedicator had no title in the right of way, and the dedication did not purport to include it.''

As to the force and effect of the proceedings taken by the city of Maplewood to pave and improve Cartan Avenue, the court further said: ''The ordinance under which this improvement was made carefully conformed to the condition of the title as we have stated it. It provided for 'paving the roadway between the outside of each gutter and a point one foot outside of the outside rail of the street car tracks

of the St. Louis & Meramec River Railroad Company, its successors and assigns, at the present time occupying the center of said street on each side.' It will be seen that this provides for two distinct roadways, one on each side of the railroad strip, each of which would be almost useless for the purpose of travel because there was no room for vehicles to pass each other or to pass a vehicle standing in front of a residence on the street. Each strip was a third of a mile in length. It appears from the record that the ordinance was passed in that form in expectation that some arrangement could be made for the pavement of that half of the street covered by the railroad tracks. . . . This assessment was made by charging it to the owners of property on each side of the hybrid street to the exclusion of the railway property in the middle. The propriety of this assessment must be determined by the provisions of the statute under which it was made. . . . The fact that this railroad property is no part of the street, but borders on each of the two portions improved, is worthy of notice. Without any connection between them, they are united by name only. Were one of them named North Cartan Avenue and the other South Cartan Avenue, the situation, from a legal standpoint, would be the same.''

Having thus held that this thirty-foot right of way was not part of the public street but private property owned and to be used as a railroad right of way, the court then considered and held that same was within the meaning of the terms ''lots and tracts of land fronting and abutting on the street or alley improved,'' as used in our statute relating to special assessments and issuing special tax bills in payment of street paving, under Section 9254, Revised Statutes 1909, as amended, Laws 1911, page 337, in force at the time this improvement was made. In this connection the court further said: ''Did the improvement consist of a single line of paving along which the private right of way of the railroad extended, no one could doubt the liability of its owner to taxation under the express words used in this statute, yet there would be nothing in principle to distinguish that situation from the one before us. In this case the railway company has deliberately elected to purchase its right of way from the private owner of the land in fee for its own exclusive use. It stands precisely as it would have stood had the entire street been afterward dedicated upon and along one side of it.'' This court accordingly held that this defendant, owner of this thirty-foot right of way, was liable to the burden of taxation as abutting proprietor along one or both of the improved roadways on either side thereof ''to the same extent as if it had been incorporated for horticultural purposes and the land had been conveyed to it for use as an orchard.''

On the rendition of the decision in the Meryl Realty Company case, supra, the city of Maplewood, at this plaintiff's suggestion, caused its engineer to make a new apportionment of the costs of the street improvement, taking into account the thirty-foot railroad right of way as abutting property on each of the two narrow roadways. By an ordinance duly passed, the tax bill now sued on was issued July 26, 1920, against this thirty-foot strip of ground for an amount which is in excess of one-half the total cost of the improvement.

A number of reasons are advanced why this tax bill is void, but it will not be necessary to notice all of them. We are at once met with the fact that the street paving in question is largely constructed on private property, and not only that, but on the very property against which the tax is levied. As we have seen, this court in the Meryl Realty Company case held that this thirty-foot strip of land used as a right of way is not part of the street but is private property abutting on the double or hybrid street. The width of the double track of street railway, measuring from the outer end of the ties, is by actual measurement 18.96 feet. The pavement of the street as actually laid extends to the end of these ties on either side. The actual width of the north driveway from the north curb to the end of the ties under the north railway track is 10.65 feet, and the width of the south driveway, measured in the same manner, is 10.70 feet. Under the paving ordinance, the width of each driveway on either side of the railway right of way was to be nine feet two inches and to extend within one foot of the ends of the ties. The width of the street from curb to curb is 41.31 feet, the balance of the street being used for sidewalk. Deducting the width of the railroad right of way, thirty feet, from the total width from curb to curb, leaves only 11.31 feet of the public street that is covered by the pavement, one-half or 5.65 feet on each side of the railroad right of way. The balance of the pavement, approximately one-half, is on the railroad right of way.

It is well settled that a tax bill issued in payment of a street pavement constructed on private property, whether owned by the defendant in the tax bill or someone else, or to a substantial extent on private property, is void. It was so held in Kirkwood v. Handlan, 285 Mo. 92, 98, 225 S. W. 692, where the court said: "The principal defense was the alleged ownership by the defendant of the east one-half or thirty feet of the strip sixty feet wide which was improved. If defendant owned the east half of the street, the improvements were made on private property and the tax bill issued against defendant is void."

In City of Springfield v. Eisenmayer, 297 S. W. 460, this is said: "It is well settled that where public improvements are constructed *in invitum* on private grounds, tax bills issued against the owner of

the abutting property, in payment for the improvement so constructed, are void.''

` This question is well considered in Springfield v. Baxter, 180 Mo. App. 40, 45, and see, also, Naylor v. Harrisonville, 207 Mo. 341.

█ It is strenuously argued that the entire sixty feet of Cartan Avenue is a public street under a proper interpretation of the deed from the Cartan Real Estate Company to the defendant railroad and the subsequent plat of Cartan Addition, and therefore none of the improvement is on private property. In its reply brief, plaintiff says: ''Of course, what the grantor in the deed to the railroad company meant to do was to reserve the right to dedicate the thirty-foot strip deeded to the railroad company as a public street subject to the right of the railroad company to operate its railroad thereon,'' for there was no sense or need in reserving a right to dedicate the land outside the right of way to the public as a street. Such is unquestionably the theory on which the city proceeded in having this street paved and in levying the assessment of costs for so doing and issuing the first tax bills for the entire cost against the property owners on the two sides of this supposed sixty-foot street. That question, however, has been settled in the case of Meryl Realty Company against this plaintiff, 284 Mo. 329, 338, 223 S. W. 904, where the court said: ''This deed, which is copied in full in our statement, seems to be the product of infinite pains to avoid the inference of any right of the city to interfere in any manner with the 30-foot strip in question. The right to dedicate, and the dedication itself, applied only to two distinct strips of land lying on either side of the right of way between the ends of the ties of the railway company and the boundary of the street. The dedicator had no title in the right of way, and the dedication did not purport to include it.'' A reading of that entire case shows that it unquestionably holds that the thirty-foot strip in the center of Cartan Avenue is private property owned by defendant as a railroad right of way. On that theory alone the tax bill now sued on was issued and such tax bill and this suit to enforce same is against this thirty-foot strip (all of it) as private property of the defendant. This defendant was not a party to that suit, as was plaintiff, but accepts the same as correctly deciding its ownership of the thirty-foot strip of land in the middle of Cartan Avenue. There is no basis for holding, even if the tax bill and this suit is on that theory, that defendant's right of way of thirty feet has been narrowed to the nineteen feet actually covered by the two street car tracks.

█ We may also say in this connection that the Statute of Limitations based on adverse user and possession does not run against a railroad right of way, itself a public use, and mere permissive use of parts of same by individuals or the public, except possibly in ex-

treme cases, does not work an estoppel. [St. Louis-San Francisco Ry. Co. v. Dillard, 328 Mo. 1154, 43 S. W. (2d) 1034, 1037; St. Louis-San Francisco Ry. Co. v. King, 329 Mo. 1203, 50 S. W. (2d) 94, 99.]

■ The trial court also held the tax bill and the ordinance authorizing the street improvement in question void as being unreasonable and oppressive. On this point the trial court in a memorandum opinion said: ''These improved strips of hybrid roadway are too narrow to permit two vehicles to pass each other. To pass another vehicle it is necessary for the traveler to leave the roadway and become a trespasser upon the right of way of the defendant, and the physical conditions of said right of way do not permit the use of same with safety. Streets are intended notably to serve as a means of access to abutting property, but also to afford a thoroughfare. It is impossible for vehicles to use either roadway in traveling both directions. If each roadway were intended for travel in one direction, it is still impracticable, for the reason that the street would be obstructed either by a standing or slow-moving vehicle. A vehicle parked in front of a house will obstruct the roadway and compel travelers to become trespassers on the right of way. . . . The street or streets as now constituted do not benefit the abutting property owners. The assessment is unjust and arbitrary, and in substantial excess of any possible benefit to the abutting property. Special assessments are predicated and sustained on the theory that property which is assessed is benefited by the improvement, and unless there is an actual improvement which can function as such, the property cannot be assessed. The city of Maplewood should not have proceeded with the improvement until it had protected the abutting property owners by some agreement with the street railway company providing for the pavement of its right of way, or, absent such an agreement, it should not have proceeded with the improvement until it had evoked the power of eminent domain and taken the right of way for widening the street. The city of Maplewood had no right to rely upon a mere request made to the railway company. It is the duty of a court to hold an ordinance unreasonable upon a showing of facts which makes said ordinance unreasonable. Under the evidence in this case the court finds that the ordinances upon which said special tax bill was founded are unreasonable, and therefore void.''

This finding of facts is in accordance with the evidence and applies to the conditions as they exist without taking into account the fact that each driveway is located about one-half on defendant's right of way. If such driveway is confined to the public street, it is only about five feet wide and would be of little, if any, value as a public street.

910

It is not necessary to consider other questions presented. The trial judge ruled correctly in holding the tax bill void, and the judgment appealed from is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.